IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WHOLE WOMAN'S HEALTH, ET AL., | § | |
|     *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:16-cv-01300-SS |
| | § | |
| JOHN HELLERSTEDT, M.D., | § | |
|     *Defendant*. | § | |

**DEFENDANT'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

# TABLE OF CONTENTS

**Page**

Introduction ......................................................................................................... 1

Findings of Fact ................................................................................................... 1

I.  The Revised Rules Were Adopted with the Express Purpose of Respecting Unborn Life. ................................................................................ 1

II.  The State Has Provided an Unambiguous Interpretation of the Revised Rules. ................................................................................................ 3

III.  Both Parties Have Identified Vendors Willing to Provide for the Disposition of Fetal Tissue in Compliance With the Revised Rules. ............. 4

IV.  Both Parties Have Produced Evidence of Cost-Effective Methods of Complying With the Revised Rules. .............................................................. 7

V.  Plaintiffs Have Not Identified Any Irreparable Harm That Would Occur if the Revised Rules Went Into Effect. ............................................. 11

Conclusions of Law ........................................................................................... 13

I.  The Revised Rules Have a Clear and Unambiguous Interpretation. ............. 13

II.  Plaintiffs Have Not Proven a Substantial Likelihood of Success on the Merits of Either of the Their Constitutional Claims. ................................... 15

   A.  The revised rules do not place a substantial obstacle in the path of a woman seeking an abortion. ......................................................... 16

      1.  The focus of the *Casey* test is on the ability of a woman to choose an abortion. .......................................................................... 16

      2.  Plaintiffs have failed to prove that the purpose of the revised rules was to prevent women from obtaining abortions. ...................... 19

      3.  The revised rules do not have the unconstitutional effect of imposing an undue burden on women seeking an abortion. ............... 21

         a.  Texas's decision to respect unborn life through the humane treatment of fetal tissue does not prevent women from obtaining abortions. ................................................. 21

         b.  The revised rules do not harm women's health. ............................ 23

         c.  The revised rules do not restrict access to abortion. ..................... 24

   B.  The revised rules are not unconstitutionally vague. .................................... 25

III.  Plaintiffs Have Not Satisfied the Other Elements of Injunctive Relief. ........... 26

Conclusion .......................................................................................................... 27

Certificate of Filing and Service. ......................................................................... 29

### INTRODUCTION

The Supreme Court has repeatedly recognized that States have an interest in the life of the unborn and may enact regulations that express a profound respect for that life. Texas has chosen to do so by revising the rules that govern the disposition of fetal tissue and remains. No longer can health-care facilities dispose of the unborn in sewers or landfills.

Regulations that express such respect are constitutional so long as they do not create a substantial obstacle to a woman's right to choose to have a pre-viability abortion. In this case, Plaintiffs have not met their burden to prove that the revised rules create any type of obstacle. Plaintiffs have admitted that they can comply with the revised rules, and compliance will come at little or no additional cost. Instead, Plaintiffs offer philosophical objections—they disagree with Texas's decision to respect unborn life and treat fetal tissue with dignity. But Plaintiffs' mere policy disagreement does not render the revised rules unconstitutional. The request for a preliminary injunction should be denied.

### FINDINGS OF FACT

## I.   The Revised Rules Were Adopted with the Express Purpose of Respecting Unborn Life.

1.   The Department of State Health Services began considering revisions to its rules regarding the Definition, Treatment, and Disposition of Special Waste From Health Care-Related Facilities in January 2016. 1.RR.154:14-16. The Department first filed the proposed amendments at issue in this case with the Texas Register on

1

June 20, 2016. These appeared in the July 1, 2016 publication of the Texas Register. 41 Tex. Reg. 4772 (2016).

2.   After holding a public hearing and receiving more than 20,000 comments, the Department chose to withdraw the proposed rules. The Department conducted additional research and re-filed the proposed rules and notice of its rule review in September 2016, and the proposed rules appeared in the September 30, 2016 publication of the Texas Register. 41 Tex. Reg. 7659 (2016). The statutory authority for the rule review and proposed amendments included numerous statutes that express the State's policy of demonstrating a profound respect for the life of the unborn.  41 Tex. Reg. 7660-61 (2016).

3.   The proposed amendments were adopted with some changes on November 28, 2016, and published as adopted in the Texas Register on December 9, 2016. 41 Tex. Reg. 9709 (2016) (the "revised rules").

4.   The revised rules published at adoption contained a reasoned justification as required by the Texas Administrative Procedure Act. That justification set out the purpose of the revised rules, which included inter alia: "[t]he rules carry out the department's duty to protect public health in a manner that is consonant with the State's respect for life and the dignity of the unborn." 41 Tex. Reg. 9709 (2016).

5.   The Department's central purpose in adopting the amendments to the rules—which prohibit a health care-related facility from either grinding fetal tissue and discharging it into the sewer or disposing of fetal tissue, or ashes of fetal tissue, into a sanitary landfill—was to bring the rules in line with the policy of the State to express profound respect for the unborn. 1.RR.154:6-13.

6.   Dr. Jeffrey Bishop testified that states have a responsibility to uphold the dignity of human life and that a regulation prohibiting the grinding and discharge of fetal remains into the sewer furthers that responsibility. 2.RR.56:5-57:13. Dr. Bishop testified that respect for life and human dignity is a philosophical idea, not necessarily a religious idea. 2.RR.57:11-20.

7.   Dr. Bishop testified that the scattering of ashes of fetal remains furthers the dignity that adheres to human lives. 2.RR.65:16-24.

## II. The State Has Provided an Unambiguous Interpretation of the Revised Rules.

8.   Ms. Jennifer Sims testified that the revised rules continue to allow abortion providers to provide fetal and/or embryonic tissue to forensic and pathological laboratories. The revised rule did not modify that requirement in any way. 1.RR.152:15-153:13.

9.   Ms. Sims testified that the revised rules have never required that individual sets of fetal or embryonic tissue be disposed of individually, and that no language altering this has been added to the revised rules. 1.RR.147:12-148:5. Instead, the revised rules allow the fetal or embryonic tissue from two or more pregnancies to be commingled and disposed of together through cremation, incineration, or burial. 1.RR.147:12-148:17, 148:24-149:13.

10.   Ms. Sims testified that the rules have never required that fetal tissue be segregated from placental tissue and/or other products of conception, and that no language altering this has been added to the revised rules. 1.RR.148:6-17. Instead, fetal

and other tissue may be commingled and disposed of together through cremation, incineration, or burial. 1.RR.148:24-149:13.

11.  Ms. Amy Hagstrom Miller testified that she understands that the Department has clearly explained that fetal tissue and non-fetal tissue may be commingled under the revised rules. 1.RR.26:13-17.

12.  Ms. Sims testified that, by removing deposition into a sanitary landfill as a disposition option, fetal tissue or the ashes of fetal tissue may no longer be placed in a sanitary landfill. 1.RR.149:18-21, 186:10-13.

13.  The revised rules do not require health care-related facilities to notify patients about where the fetal tissue or remains will be placed for disposal. 2.RR.40:15-41:5.

14.  Dr. Karen Swenson testified that disposition of fetal tissue in a landfill does not require informed consent from the patient. 2.RR.29:9-22.

### III. Both Parties Have Identified Vendors Willing to Provide for the Disposition of Fetal Tissue in Compliance With the Revised Rules.

15.  Plaintiffs located at least one provider in the Dallas-Fort Worth area who would dispose of fetal tissue by cremation or incineration followed by burial in compliance with the rules. P. Ex. 8 at 14, ¶ 25; 1.RR.32:15-21.

16.  Plaintiffs did not disclose the identity of the provider but Dr. Anne Layne-Farrar testified that the provider could be found by utilizing the proper search terms on the internet. 1.RR.115:15-25.

17.  The Texas Catholic Conference of Bishops has offered to inter fetal remains at no cost to medical providers. D. Ex. 15; 2.RR.83-84

18.   Currently, the Texas Catholic Conference of Bishops offers disposition of the fetal remains of miscarried children by burial. 2.RR.81:14-82:18, 87:8-17. Each of the fifteen Texas Catholic dioceses has committed to provide a free cemetery burial for either fetal remains or ashes as part of its burial ministry. 2.RR.95:14-19. The fifteen dioceses cover the entire geographic area of the State. 2.RR.95:20-96:10. Based on their experience handling the remains of miscarried children and their commitment to the burial ministry, the Texas Catholic Conference of Bishops is prepared to immediately provide free burial to all the fetal remains resulting from abortion if necessary. 2.RR.99:10-15, 107:21-108:23.

19.   The Archdiocese of Chicago has long provided free burial of fetal remains resulting from abortion. 2.RR.87:15:88:3.

20.   Mr. Jay Carnes, who operates several funeral homes and a crematory in Texas, also currently handles the disposition of fetal remains. 2.RR.125:8-10, 131:8-13. He has offered to provide disposition services at a reasonable cost. His proposed fee within a 50-mile radius of his facilities is $175 for removal and transportation of all sets of fetal remains from a facility and $175 to cremate and bury or scatter the ashes at sea of the remains of up to twenty-five sets of fetal remains. 2.RR.131:23-132:2, 133:4-134:15. 169:19-25.

21.   A medical provider who chooses to transport the remains to Mr. Carnes's crematory could avoid the $175 removal fee. 2.RR.147:20-23. Outside of the radius, the medical provider would incur additional charges for the return leg of a pick-up and removal. 2.RR.141:4-12. Mr. Carnes can, and does currently, handle remains throughout the State of Texas. 2.RR.125:15-126:9.

5

22.   Mr. Carnes currently has a number of contracts under negotiation to provide this service with eight hospitals, which includes numerous separate facilities, in the Houston area. 2.RR.142:6-14. Like the Texas Catholic Conference of Bishops, Mr. Carnes believes he can provide disposition for all the fetal remains in the State if called upon to do so. 2.RR.143:4-10.

23.   Mr. Carnes has contacted the U.S. Coast Guard and confirmed its willingness to scatter the ashes of the fetal remains at sea as it does for other cremated remains. 2.RR.140:8-19.

24.   To the extent Plaintiffs argue that they are unable to comply with the revised rules, their arguments are without evidentiary support, as Plaintiffs have made little or no effort to determine whether they could comply with the revised rules.

25.   Plaintiffs are aware that there are hospitals that currently do not dispose of fetal tissue in a landfill. 1.RR.27:23-28:3. Dr. Swenson testified that even prior to these rule amendments, Seton Hospital segregated and arranged for the burial of fetal remains rather than disposing of them in a landfill. 2.RR.21:10-22:1, 33:10-34:12. Ms. Jennifer Allmon testified that the Catholic dioceses currently handle the burial of miscarried fetal remains for both Catholic and non-Catholic hospitals. 2.RR.103:9-24.

26.   Whole Woman's Health clinic has not made any individual effort to contact funeral service providers to locate a crematory that could dispose of fetal tissue in compliance with the revised rules. 1.RR.30:13-18. Ms. Hagstrom Miller testified that she did not contact any hospitals to determine how they dispose of fetal tissue. 1.RR.28:23-29:10.

27.  Dr. Lendol Davis did not testify to any efforts he or anyone at his clinics has made to determine whether they could comply with the revised rules.

28.  Dr. Layne-Farrar interviewed only eleven crematoriums or funeral homes from non-major urban areas to reach her conclusions. 1.RR.112:3-8, 122:12-18. She does not know how many crematoriums burn pathological waste and cannot testify that the Dallas-Fort Worth entity is the only one. 1.RR.122:4-123:13.

29.  Dr. Layne-Farrar has not contacted any of the companies that incinerate medical waste to determine whether they can make adjustments that would allow them to dispose of fetal tissue in compliance with the revised rules.  1.RR.123:14-16, 124:2-15, 124:16-125:4.  Dr. Layne-Farrar did not contact any medical waste disposal companies either. 1.RR.123:14-16.

30.  Because the parties have identified vendors willing to provide disposition services in compliance with the revised rules, and Plaintiffs have failed to demonstrate a lack of vendors, Plaintiffs have not proven that the revised rules will impose a substantial obstacle to a woman's right to obtain an abortion. Relatedly, Plaintiffs have not met their burden to demonstrate immediate, irreparable harm if the injunction is denied.

## IV. Both Parties Have Produced Evidence of Cost-Effective Methods of Complying With the Revised Rules.

31.  Counsel for the Plaintiffs stated at the TRO hearing that "Plaintiffs are not making an argument about cost as far as abortion clinics go." TRO Tr. 29:17-18.

32.  Dr. Layne-Farrar located a vendor currently able to dispose of all fetal tissue generated by abortion providers for between $0.54 and $1.56 per procedure. P. Ex. 8 at 13-14, ¶¶ 23-24; 1.RR.32:15-21, 34:5-12, 129:8-130:13.

33.  Dr. Layne-Farrar evaluated the costs to Whole Woman's Health of using the Dallas-Fort Worth vendor to dispose of all fetal tissue and concluded that doing so would have a net cost (above current expenditures) to Whole Woman's Health of between $0.54 and $1.56 per abortion procedure. P. Ex. 8 at 13-14, ¶¶ 23-24; 1.RR.129:8-130:13.

34.  Dr. Layne-Farrar testified that she does not understand the revised rules to require any individualized funerals or funeral ceremonies for fetal or embryonic tissue. 1.RR.127:18-25, 128:25-129:6.

35.  Dr. Layne-Farrar verified that the costs she summarized for an individual burial or cremation in Texas have no bearing on Whole Woman's Health's ability to provide abortion services under the revised rules if the revised rules do not require an individualized burial or cremation. 1.RR.127:18-25.

36.  Dr. Layne-Farrar verified that the costs she summarized for a "full funeral service" in Texas have no bearing on Whole Woman's Health's ability to provide abortion services under the revised rules if the revised rules do not require a "full funeral service." 1.RR.128:25-129:6.

37.  Ms. Hagstrom Miller considered Dr. Layne-Farrar's estimate that using the Dallas-Fort Worth vendor to dispose of all fetal tissue would cost Whole Woman's Health between $0.54 and $1.56 per abortion procedure, and concluded that it is a reasonable and accurate estimate of her costs using that vendor.  1.RR.34:5-12.

38.   Ms. Sims considered Dr. Layne-Farrar's estimate that using the Dallas-Fort Worth vendor to dispose of all fetal tissue would cost Whole Woman's Health between $0.54 and $1.56 per abortion procedure, and concluded that while it seems slightly high to her, it is a reasonable estimate of costs for disposition of fetal and embryonic tissue pursuant to the revised rules. 1.RR.159:11-22.

39. Ms. Hagstrom Miller testified that she knows the Texas Catholic Conference of Bishops has volunteered to dispose of all fetal and embryonic tissue generated by abortion facilities in Texas at no cost. 1.RR.34:13-18.

40. Ms. Hagstrom Miller testified that, were Whole Woman's Health to avail itself of the offer by the Texas Catholic Conference of Bishops, it would not need to concern itself with cremation, burial, or the costs of either burial or cremation. 1.RR.34:19-35:18.

41. On average, there are approximately 52,000 surgical abortions annually in Texas. D. Ex. 2; 1.RR.161:13-19.

42. The average surgical abortion in Texas takes place at 7.5 weeks gestation. D. Ex. 3.

43. The average weight of fetal/embryonic tissue at 8 weeks is 0.4 ounces. D. Exs. 4, 8.

44. Ms. Hagstrom Miller testified that ninety percent of abortions performed by Whole Woman's Health are performed at ten weeks gestation or less, with the remainder between ten and eighteen weeks. 1.RR.32:3-6.

45.  Accordingly, Ms. Sims testified that the Department concluded that surgical abortions in Texas annually produce approximately 130 pounds of fetal and/or embryonic tissue. 1.RR.161:8-25.

46.  Basic cremation services for an adult weighing up to 250 pounds are available in Texas for approximately $650. That fee includes both the cost of cremation itself and costs for funeral directors and staff. The latter costs are usually reduced for "direct cremations" wherein only tissue cremation itself is needed.   D. Ex. 7; 1.RR.163:24-165:5.

47.  Crematoria generally charge the same price for each cremation, regardless of the mass to be cremated, up to a specified weight limit. Generally, the base price for cremations covers mass up to and including 250 pounds. D. Ex. 7; 1.RR.165:1-5.

48.  Accordingly, Ms. Sims testified that the Department concluded that 250 pounds of fetal and/or embryonic tissue could be cremated at a cost of between $125 and $650, if all such tissue was cremated at one time. D. Ex. 7; 1.RR.163:24-165:5.

49.  At ten weeks gestation, the average products of conception, including fetal/embryonic tissue, placenta and blood, and all other tissue, weighs between approximately ten grams (10th percentile) and approximately thirty-five grams (90th percentile). D. Ex. 9.

50.  Up to 250 pounds of tissue can be cremated at a cost of between $125 and $650, if all such tissue was cremated at one time. D. Ex. 7; 1.RR.163:24-165:5.

51.  Basic burial services for an adult-sized body up to 200 pounds are available in Texas for approximately $300. D Exs. 5, 7; 1.RR.162:18-22.

10

52.  The process of cremation reduces the mass of tissue by approximately ninety percent. D. Ex. 6; 1.RR.167:10-11.

53.  Ms. Sims testified that the Department information concluded up to 200 pounds of tissue or ash can be buried at a cost of approximately $300, if all such tissue or ash is buried at one time. D. Exs. 5, 7; 1.RR.162:18-22.

54.  Ms. Hagstrom Miller testified that Whole Woman's Health currently disposes of fetal tissue in a sanitary landfill and would like to continue doing so. Ms. Hagstrom Miller did not identify any other practice of Whole Woman's Health that would be curtailed by the revised rules. 1.RR.26:25-27:4.

55.  Because the parties have identified vendors willing to provide disposition services in compliance with the revised rules at little or no cost, Plaintiffs have not proven that the revised rules will impose an undue burden on a woman's right to obtain an abortion. Similarly, Plaintiffs have not met their burden to demonstrate immediate, irreparable harm if the injunction is denied.

## V.  Plaintiffs Have Not Identified Any Irreparable Harm That Would Occur if the Revised Rules Went Into Effect.

56.  Medical facilities are able to store fetal tissue for at least a month by using one household freezer. 1.RR.45:4-16. Fetuses may be stored together or separately prior to disposition. 1.RR.44:2-8, 44:23-45:3. A facility could purchase an additional freezer to reduce scheduled fetal tissue pick-ups if necessary. 1.RR.46:6-7.

57.  Whole Woman's Health clinics, Austin Women's Clinic, and Brookside Medical Clinic generally have medical waste pick-ups semi-monthly. 1.RR.22:8-15, 59:12-23.

58.  Ms. Hagstrom Miller testified that she believes it is possible she could reduce medical waste collections from Whole Woman's Health clinics to once a month. 1.RR.45:12-16.

59.  Dr. Davis testified that his abortion clinic had previously gone "a couple of months" without a medical-waste vendor. 1.RR.58:10-12.

60.  Because Plaintiffs can comply with the revised rules, even if there is some delay in arranging a vendor, there will be no interruption in the provision of abortion services in Texas.

61.  Plaintiffs also offer philosophical objections to the revised rules. Ms. Hagstrom Miller testified that her primary objections to the revised rules are not about costs or logistics, but rather that the revised rules treat fetal tissue differently than other tissue (like a liver or kidney), and that the revised rules interfere with personal discretion. 1.RR.39:24-40:23.

62.  Patients, however, rarely, or almost never, ask what happens to fetal tissue after an abortion. 1.RR.17:11-13, 36:10-12, 55:17-19; 2.RR.21:4-6. As a result, the provision of abortion services in Texas will be unchanged, even if the disposition of fetal tissue is made in accordance with the revised rules.

63.  The Rev. Dr. Debra Haffner agreed that the revised rules do not directly regulate women and that they do not restrict a patient's access to abortion. 1.RR.103:13-18.

64.  Plaintiffs have not identified any clinic that will close or woman that will be unable to receive an abortion if the revised rules go into effect. Consequently, there

will be no substantial obstacle preventing women from obtaining an abortion in Texas and no irreparable harm if the revised rules go into effect.

### CONCLUSIONS OF LAW

1.   To obtain a preliminary injunction, Plaintiffs must prove (1) a substantial likelihood that they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if injunctive relief is not granted, (3) that the threatened injury outweighs the threatened harm to the party whom they seek to enjoin, and (4) that granting the relief will serve the public interest. *See Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005). Injunctive relief should not be granted "unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003)).

2.   Based on the facts found above, Plaintiffs have not met their burden of showing that they are entitled to the extraordinary relief they seek. They have not proven a substantial likelihood of success on the merits, a substantial threat of irreparable injury, that the threatened injury outweighs the harm to the State, or that an injunction serves the public interest. The Court, therefore, denies Plaintiffs' request for a preliminary injunction.

## I.   The Revised Rules Have a Clear and Unambiguous Interpretation.

3.   The disposition of fetal tissue for which no death certificate is required (those less than 20 weeks or 350g or the fetal tissue resulting from an induced abortion, regardless of gestational age or weight) is not subject to Texas Occupations Code

13

chapter 651 or Health and Safety Code chapters 711 or 716, and thus, is not regulated by the Texas Funeral Service Commission. D. Ex. 12.

4.    The revised rules do not require that fetal tissue be disposed of individually; instead, the rules allows the fetal or embryonic tissue from two or more pregnancies to be commingled and disposed of together through cremation, incineration, or burial. D. Ex. 12; 1.RR.147:12-148:17, 148:24-149:13.

5.    The revised rules do not require that fetal or embryonic tissue be separated from other placental tissue and/or other products of conception; instead, fetal and other tissue may be commingled and disposed of together through cremation, incineration, or burial. 1.RR.147:12-148:17, 148:24-149:13.

6.    The disposition of human remains and dead human bodies pursuant to chapters 711 and 716 of the Texas Health and Safety Code and chapter 651 of the Texas Occupations Code is regulated by the Texas Funeral Service Commission.  *See* Doc. 38 Ex. A (Decl. of Janice McCoy, Executive Director of the Texas Funeral Service Commission).  Those laws do not govern fetal tissue or remains for which no death certificate is required by law, which remain governed by 25 Tex. Admin. Code §§ 1.132-.136.

7.    The revision to Rule 1.132 amended the definition of "interment" to expressly allow the "scattering of ashes as authorized by law *except* as prohibited by this subchapter." 25 Tex. Admin. Code § 1.132(33) (emphasis added); *see* D. Ex. 11 (41 Tex. Reg. 9734 (2016)).  So while Rule 1.132(33) chooses to authorize disposition of ashes in a manner authorized for disposition of human remains, the incorporation by reference of "as authorized by other law" does not extend to authorizing disposition of fetal

14

tissue in a sanitary landfill.  The Department's voluntary incorporation of elements of the statute into the revised rules, to an extent expressly limited by the requirement of consistency with the revised rules, does not obligate the Department to incorporate the statute in its entirety.

8.    Furthermore, § 716.304 of the Texas Health and Safety Code does not authorize disposition of human remains (or fetal tissue assuming for the sake of argument that that chapter expressly applies to fetal tissue) in a sanitary landfill. Sections 716.302 and .303 authorize placement of ashes, upon approval of an authorizing agent, in a number of different places, including "a crypt, niche, grave, or scattering area of a dedicated cemetery," along with other enumerated options. Such specificity in chapter 716 leads to the conclusion that the Legislature did not intend to include a licensed, regulated, sanitary landfill in the phrase "private property of a consenting landowner."  "Sanitary landfill" is a defined term in Texas Health and Safety Code § 360.003.

## II.  Plaintiffs Have Not Proven a Substantial Likelihood of Success on the Merits of Either of the Their Constitutional Claims.

9.    Plaintiffs have asserted two constitutional violations under 42 U.S.C. § 1983: personal liberty and vagueness.[1] They have not demonstrated a substantial likelihood that they will prevail on either claim.

---

[1] The parties have stipulated that Plaintiffs' privacy claim is moot. Docs. 37 & 39. It is, therefore, no longer part of this lawsuit.

15

10.  Plaintiffs have not raised a claim that the revised rules violate state law. Regardless, sovereign immunity would deprive this Court of jurisdiction over any allegation that the revised rules violate state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984).

## A.  The revised rules do not place a substantial obstacle in the path of a woman seeking an abortion.

11.  Plaintiffs' "personal liberty" claim does not state a constitutional violation. Properly reframed as an undue-burden challenge, Plaintiffs' claim fails, as the revised rules were not adopted with an unconstitutional purpose and do not have the unconstitutional effect of placing a substantial obstacle in the path of a woman seeking an abortion.

### 1.  The focus of the *Casey* test is on the ability of a woman to choose an abortion.

12.  The Supreme Court in *Planned Parenthood of Southeastern Pennsylvania v. Casey* set out the undue-burden test, which determines whether an abortion regulation is unconstitutional by asking "if its purpose or effect is to place a substantial obstacle in the path of a women" seeking a pre-viability abortion. 505 U.S. 833, 878 (1992) (plurality op.).[2]

13.  As relevant to this case, "regulations which do no more than create a structural mechanism by which the State . . . may express profound respect for the life of the unborn are permitted, if they are not a substantial obstacle to the woman's exercise of the right to choose." *Gonzales v. Carhart*, 550 U.S. 124, 146 (2007) (quoting

---

[2] All references to *Casey* are to the plurality opinion, unless otherwise noted.

*Casey*, 505 U.S. at 877). Because the revised rules "express [Texas'] profound respect for the life of the unborn," they are constitutional unless Plaintiffs demonstrate that they impose a substantial obstacle to a woman's right to obtain an abortion.

14.   The right to an abortion established in *Roe v. Wade*, 410 U.S. 113 (1973), and reaffirmed in *Casey*, includes only the right to choose an abortion without an undue burden imposed by the State. *Casey*, 505 U.S. at 877 (stating that there is no "right to be insulated from all others" when deciding whether to obtain an abortion). It is only when a state regulation imposes an undue burden on a woman's ability to "make th[e] decision [to obtain an abortion] does the power of the State reach into the heart of the liberty protected by the Due Process Clause." *Id.* at 874; *id.* at 877 ("What is at stake is the woman's right to make the ultimate decision . . . ."). Regulating the disposition of fetal tissue following an abortion does not impact the ultimate right of a woman to choose an abortion in the first place, absent evidence that it makes the procedure cost-prohibitive or prevents access to clinics.

15.   Consequently, when Plaintiffs allege a constitutional right to "personal liberty" that includes an independent right to determine what happens with fetal tissue following an abortion or miscarriage, they seek to expand the holdings of *Roe* and *Casey* beyond their current boundaries. In short, no such constitutional right exists. Plaintiffs have cited no cases from the Supreme Court or the Fifth Circuit establishing such a right. And creating that right would require extending existing precedent far beyond its current bounds. The only question, then, that the Court needs to ask and answer is whether the revised rules create a substantial obstacle to a woman's right to choose an abortion.

17

16.   Neither do Plaintiffs' vague references to religion establish a violation of the right identified in *Roe* and *Casey*. Plaintiffs have not brought a First Amendment claim, and the revised rules do not impose any religious practice on any person.

17.   Plaintiffs' arguments regarding the Supreme Court's recent decision in *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016), also fall short. *Whole Woman's Health* concerned health and safety regulations of abortion clinics and doctors, triggering the Court's precedent that "[u]nnecessary health regulations that have the purpose or effect of presenting a substantial obstacle to a woman seeking an abortion impose an undue burden on the right." *Id.* at 2300 (quoting *Casey*, 505 U.S. at 878). Relying on the "unnecessary health regulations" language, the Court determined that the constitutionality of health and safety regulations of abortion clinics must be determined by balancing their benefits and burdens. *Id.* at 2300, 2309.

18.   Here, however, the State has adopted the revised rules for the purpose of respecting unborn life. It is, therefore, not proper to balance the health benefits of the revised rules with the burdens as would be required for a health and safety regulation. Instead, the Court considers only whether the revised rules pose a substantial obstacle to the right to choose an abortion. *Casey*, 505 U.S. at 877. For example, the Court has previously upheld regulations that were not aimed at health and safety, such as 24-hour waiting periods and a partial-birth abortion ban, without balancing medical benefits against any burdens. *Gonzales*, 550 U.S. at 132; *Casey*, 505 U.S. at 886-87.

19.   Even so, there are societal benefits to respecting the life of the unborn, and any laws designed to recognize the dignity of the unborn may encourage individuals

contemplating abortion to consider the impact of the procedure on the fetus. *Casey*, 505 U.S. at 882 ("Nor can it be doubted that most women considering an abortion would deem the impact on the fetus relevant."). Given the minimal burden imposed by the revised rules, they withstand constitutional challenge even under a balancing test.

### 2. Plaintiffs have failed to prove that the purpose of the revised rules was to prevent women from obtaining abortions.

20.   The revised rules do not have the "purpose" of "plac[ing] a substantial obstacle in the path of a women" seeking a pre-viability abortion. *Id.* They, therefore, withstand constitutional scrutiny under a purpose analysis.

21.   Constitutional analysis of a regulation's purpose is highly deferential. *E.g.*, *McCleskey v. Kemp*, 481 U.S. 279, 298-99 (1987) (where "there [are] legitimate reasons" for a law, courts "will not infer a discriminatory purpose"). The Supreme Court has never found an abortion regulation unconstitutional solely because it had an improper purpose, and the Court has questioned whether it could. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). This Court need not reach that question because Plaintiffs have failed to demonstrate that the revised rules were motivated by an unconstitutional desire to prevent women from obtaining abortions.

22.   The purpose of the revised rules, as expressed in their preamble, is to dignify unborn life by providing for the humane treatment of fetal tissue. 41 Tex. Reg. 9709 (2016). This purpose is not unconstitutional.

23.   The Supreme Court has repeatedly stated that a State may express its preference for childbirth over abortion. "Even in the earliest stages of pregnancy, the

State may enact rules and regulations designed to encourage [the patient] to know that there are philosophic and social arguments of great weight that can be brought to bear in favor of continuing the pregnancy full term . . . ." *Casey*, 505 U.S. at 872. The Court has further stated that it is a "legitimate goal" of a State to "protect[] the life of the unborn by enacting legislation aimed at ensuring a decision that is mature and informed, even when in so doing the State expresses a preference for childbirth over abortion." *Id.* at 883. If the State may inform a woman that it prefers childbirth to abortion, it does not violate the Constitution to require that fetal tissue be treated with respect after the abortion is complete.

24.   The Texas Legislature has enacted multiple statutes expressing a respect for unborn life. *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 71.001(4) (defining "individual" in the wrongful death statute to include "an unborn child at every stage of gestation"); Tex. Estates Code § 1002.002 (permitting appointment of attorney ad litem for an unborn person in guardianship proceedings); Tex. Health & Safety Code § 241.010 (requiring hospitals to release to a parent remains of an unborn child who dies as a result of an unintended, intrauterine death); Tex. Penal Code § 1.07(a)(26) (defining "individual" to include "an unborn child at every stage of gestation"). The revised rules' recognition of the Legislature's respect for unborn life is in keeping with the Supreme Court's precedent that the States may express respect for unborn life.

25.   Moreover, courts "do not assume unconstitutional intent even when statutes produce harmful results; much less do[es] [the Court] assume it when the results are harmless." *Mazurek*, 520 U.S. at 972 (citation omitted). The revised rules do not restrict access to abortion, as found above, thus it would be improper to assume the

state officials who proposed and adopted the revised rules were motivated by a desire to prevent women from obtaining abortions.

26.  The timing of the revised rules does not prove an unconstitutional purpose, either. The Department began working on the revised rules in January 2016. The revised rules were sent to be published on June 20, 2016, seven days before the Supreme Court's decision in *Whole Woman's Health* on June 27, 2016. Thus, the revised rules could not have been proposed in response to the Supreme Court's decision, as argued by Plaintiffs.

27.  Plaintiffs have failed to meet their substantial burden of proving that the state officials who proposed and adopted the rules did so with an unconstitutional purpose of preventing women from obtaining abortions.

> **3.  The revised rules do not have the unconstitutional effect of imposing an undue burden on women seeking an abortion.**

28.  Plaintiffs assert that the revised rules have three unconstitutional effects: (1) intrusion on the right of women to determine what is done with fetal tissue; (2) harm to women's health because clinics may choose to no longer send fetal tissue to pathology or crime labs; and (3) preventing women from obtaining abortions by increasing costs or closing clinics. Plaintiffs have not proven any of their claims.

> **a.  Texas's decision to respect unborn life through the humane treatment of fetal tissue does not prevent women from obtaining abortions.**

29.  As described above, there is no constitutional right to determine what is done with fetal tissue after an abortion or miscarriage. Plaintiffs express philosophical disagreements with the State's decision on how to handle fetal tissue, but that does not

present an unconstitutional burden on a woman's right to obtain an abortion in the first place.

30. To the extent Plaintiffs rely on the district court's decision in *Planned Parenthood of Indiana and Kentucky, Inc. v. Commissioner* (*PPINK*), the Indiana court's decision (1) is not binding, (2) is incorrect, and (3) concerns a different regulatory scheme. No. 1:16-CV-00763-TWP-DML, 2016 WL 3556914 (S.D. Ind. June 30, 2016).

31. The district court in Indiana erred when it concluded that the State's interest in unborn life ends when there is no longer the potential for life. *Id.* at *10. The partial-birth abortion ban in *Gonzales* was enacted out of respect for life. It was upheld even though it did not prevent any abortions, but merely regulated how they were performed. 550 U.S. at 132.

32. The law in question in the Indiana suit is also different in kind from the revised rules at issue here. Indiana's law removed fetal tissue from the definition of "infectious waste" and required a burial transit permit, typically used for the transportation of dead human bodies. *PPINK*, 2016 WL 3556914, at *4. Unlike Indiana, Texas's revised rules do not remove fetal tissue from the rules regarding special waste and do not invoke the statutes regarding the transportation of dead human bodies.

33. As a result, Plaintiffs' claim of a right to determine the disposition of fetal tissue does not describe a constitutional violation. The revised rules' demonstration of respect for unborn life does not place a substantial obstacle in the path of a woman seeking an abortion.

### b.   The revised rules do not harm women's health.

34.   The revised rules do not harm women's health. Plaintiffs make no argument that the three methods of disposition of fetal tissue that remain available under the revised rules are themselves unsafe or harmful to anyone's health when properly carried out.

35.   Rather, Plaintiffs' argument on this point is premised on the theory that Plaintiffs could be liable for sending fetal tissue to pathological or crime labs if those labs do not properly dispose of the fetal tissue. Therefore, Plaintiffs may choose to no longer cooperate with criminal investigations or with pathology exams, harming women's health.

36.   The revised rules do not change anything about the potential liability of health care facilities who provide fetal tissue to pathological labs or crime labs. Therefore, enjoining the revised rules would not provide Plaintiffs any relief in this regard.

37.   Moreover, pathological labs are required to follow the same rules regarding the disposition of fetal tissue. 25 Tex. Admin. Code § 1.134(a)(6) (to be renumbered as § 1.136(b)(6) under the revised rules). And Plaintiffs did not present evidence that pathological labs or crime labs are likely to mishandle fetal tissue.

38.   Plaintiffs' complaint about the health and safety of their patients has nothing to do with the availability of the abortion procedure. Should Plaintiffs choose not to cooperate with pathological and crime labs, it is Plaintiffs' decision that will harm women's health, not a decision imposed by the State. Consequently, Plaintiffs' arguments about women's health do not demonstrate a substantial obstacle to the ability of a woman to choose an abortion.

### c.   The revised rules do not restrict access to abortion.

39.  As found above and established by the testimony of witnesses for both Plaintiffs and Defendant, Plaintiffs are able to comply with the revised rules with little or no increased costs. Plaintiffs have not identified any clinic that will shut down or any woman or group of women that will be unable to obtain an abortion if the revised rules are enforced. As a result, the revised rules do not have an unconstitutional effect.

40.  As stated earlier, a regulation aimed at showing respect for unborn life is constitutional unless it imposes a substantial obstacle to a woman's right to an abortion. In this instance, Plaintiffs assert that (1) there may be increased costs associated with complying with the revised rules, and (2) there may be a lack of vendors willing to work with abortion clinics to dispose of fetal tissue, causing the clinics to close and women to lose access to abortion.[3]

41.  Plaintiffs have not presented sufficient evidence that the revised rules will be cost prohibitive. Their own witness testified that compliance was possible for less than $2 a procedure. In 1984, the Supreme Court found constitutional a law requiring a pathology report on each aborted fetus, even though it would increase the cost of abortion by $19.40. *Planned Parenthood Ass'n of Kan. City v. Ashcroft*, 462 U.S. 476, 490 (1983). The minimal potential increase here is not a substantial obstacle.

---

[3] Plaintiffs appear to have abandoned any argument about cost, based on counsel's statement at the TRO hearing. TRO Tr. 29:17-18. The Court addresses this argument, however, given that Dr. Layne-Farrar testified about costs.

42.  As found above, Plaintiffs' claim that there is only one vendor in the State willing to provide for the disposition of fetal tissue in accordance with the revised rules is without evidentiary support. Thus, Plaintiffs' claim that the revised rules tie all abortion clinics in the State to one vendor does not demonstrate a substantial obstacle.

43.  Regardless, to the extent Plaintiffs assert that someday there may not be a vendor willing to provide interment for fetal tissue, their claim is not ripe for consideration. *See, e.g.*, *Caprock Plains Fed. Bank Ass'n v. Farm Credit Admin.*, 843 F.2d 840, 845-46 (5th Cir. 1988) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)) (finding claim unripe because plaintiffs' "fear of impending harm is based on 'contingent future events that may not occur as anticipated'"); *see also* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3532 (1984).

44.  As a result, Plaintiffs have failed to demonstrate that they are likely to prevail on the merits of their personal liberty claim.

**B.   The revised rules are not unconstitutionally vague.**

45.  Plaintiffs' remaining vagueness claim will likely fail on the merits. Plaintiffs assert that the revised rules are vague because they do not provide clarity about what healthcare providers must do with the ashes of incinerated or cremated fetal tissue.

46.  It is a fundamental principle of constitutional law that statutes or rules be construed to uphold their constitutionality. *See, e.g.*, *Frisby v. Schultz*, 487 U.S. 474, 483 (1988) (noting the "well-established principle that statutes will be interpreted to avoid constitutional difficulties"); *United States v. Vuitch*, 402 U.S. 62, 70 (1971)

("[S]tatutes should be construed whenever possible so as to uphold their constitutionality"). Statutes are not unconstitutionally vague when they establish "an imprecise but comprehensible normative standard," but only when "no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971).

47.  As determined above, the revised rules deleted "sanitary landfill" from the places where ashes of fetal tissue may be scattered.  The deletion of "sanitary landfill" from the sections of the rules applicable to fetal tissue, the inclusion of "sanitary landfill" in other sections, and the clarification in the preamble to the revised rules make clear neither fetal tissue, nor ashes of fetal tissue, may be disposed of in a sanitary landfill.

48.  The State confirmed this understanding of the revised rules through testimony and argument. The Supreme Court has acknowledged that such representations are to be given consideration. *See, e.g.*, *Frisby*, 487 U.S. at 483 (noting that the interpretation of a statute was "supported by the representations of counsel for the town at oral argument"); *Bellotti v. Baird*, 428 U.S. 132, 143 (1976) ("The interpretation placed on the statute by appellants in this Court is of some importance and merits attention, for they are the officials charged with enforcement of this statute.").

49.  Because the revised rules are not unconstitutionally vague, Plaintiffs are unlikely to prevail on the merits of their vagueness challenge.

### III. Plaintiffs Have Not Satisfied the Other Elements of Injunctive Relief.

50.  Plaintiffs have not shown any irreparable harm that would occur if the injunction were denied. As described by the clinic operators, they are able to store fetal tissue at their clinics, and as demonstrated through several witnesses, there are cost-

26

effective means available to comply with the revised rules. There are currently medical facilities throughout the state that dispose of fetal tissue in a manner that complies with the revised rules. Plaintiffs will suffer no harm, much less irreparable harm, if their requested injunction is denied.

51.   Because the revised rules impose no harm, irreparable or otherwise, the balance of equities favors the State. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."); *see also Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers). The revised rules were properly adopted and are constitutional. The State should be permitted to give them effect.

52.   Finally, granting relief to Plaintiffs will not serve the public interest. The Supreme Court has held that the State has a legitimate interest in expressing its respect for the life of the unborn. Texas has done so through its revised rules, and the rules impose no unconstitutional burden. The State should, therefore, be permitted, consistent with Supreme Court precedent, to show its respect for unborn life by providing for the humane treatment of fetal tissue.

53.   Accordingly, Plaintiffs have failed to demonstrate their entitlement to a preliminary injunction, and their request is denied.

### Conclusion

For the foregoing reasons, the Court should deny Plaintiffs' request for a preliminary injunction.

27

Respectfully submitted.

KEN PAXTON
Attorney General of Texas
JEFFREY C. MATEER
First Assistant Attorney General
BRANTLEY STARR
Deputy First Assistant Attorney General
JAMES E. DAVIS
Deputy Attorney General for Civil Litigation
NICHOLE BUNKER-HENDERSON
Chief, Administrative Law Division

/s/ John S. Langley
JOHN S. LANGLEY
Assistant Attorney General
Texas Bar No. 11919250

CRAIG M. WARNER
Assistant Attorney General
BETH KLUSMANN
Assistant Solicitor General
TODD LAWRENCE DISHER
Special Counsel for Civil Litigation

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 936-7935
Facsimile: (512) 320-0167
*John.Langley@oag.texas.gov*

*Attorneys for Defendant*

28

CERTIFICATE OF FILING AND SERVICE

I certify that on January 12, 2017, this document was served on the following counsel of record through the Court's CM/ECF Document Filing System or through e-mail:

Patrick J. O'Connell
Law Offices of Patrick J. O'Connell PLLC
2525 Wallingwood, Bldg. 14
Austin, Texas 78746
pat@pjofca.com

David Brown
Stephanie Toti
Molly Duane
Center for Reproductive Rights
199 Water St. 22nd Floor
New York, NY 10038
dbrown@reprorights.org
stoti@reprorights.org
mduane@reprorights.org

J. Alexander Lawrence
Morrison & Foerster LLP
250 W. 55th Street
New York, NY 10019
alawrence@mofo.com

/s/ John S. Langley
JOHN S. LANGLEY
Assistant Attorney General