**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

------------------------------------------------------------ x
WHOLE WOMAN'S HEALTH, et al.,     :
    :
           Plaintiffs,     :
    :
      v.     :
    :
    :
JOHN HELLERSTEDT, M.D.,     :
    :
           Defendant.     :
    :
    :
------------------------------------------------------------ X

|  |
|---|
| CIVIL ACTION |
| CASE NO. 1:16-CV-01300-SS |

## PLAINTIFFS' MOTION TO LIFT STAY

Plaintiffs respectfully request that this Court lift the stay currently in effect, and allow preliminary injunction proceedings to resume against Texas Senate Bill 8 ("SB 8"), signed into law two days ago, and its implementing regulations.

### I.    CASE HISTORY

The present case is a constitutional challenge to amendments to Texas regulations governing "special waste from health care-related facilities" (the "Amendments"), 25 Tex. Admin. Code §§ 1.131-1.137, which were published in the Texas Register on December 9, 2016, by the Texas Health and Human Services Commission ("HHSC") on behalf of the Texas Department of State Health Services ("DSHS") (ECF No. 49 at 7). The Amendments generally define a new category of "pathological waste" called "fetal tissue," and impose restrictions on the methods by which healthcare providers are allowed to dispose of "fetal tissue." (ECF No. 49 at 5-7). Plaintiffs—Texas healthcare providers and facilities who provide pregnancy-related medical

1

care—moved for a preliminary injunction against the enforcement of the Amendments, which this Court granted on January 27, 2017. (ECF Nos. 49 & 50.)

Defendant—Dr. John Hellerstedt, the Commissioner of DSHS, charged with enforcing the Amendments—filed a notice of appeal on February 23 (ECF No. 56), and on the same day moved this Court to stay proceedings pending the resolution of the appeal of the preliminary injunction (ECF No. 57). Defendant's motion argued that allowing the Court of Appeals to review this Court's application of the "undue burden" standard first applied in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), to the preliminary record, might have a substantial impact on the litigation going forward, and so a stay would reduce the chances of duplicative and potentially unnecessary litigation. (ECF No. 57 at 2-5). Plaintiffs opposed the motion to stay, primarily urging the interests of justice as laid out in caselaw, and noting that, "[t]he Texas Legislature is currently considering legislation to codify into statute a somewhat different version of the interment or cremation requirement than that included in the Amendments," from which Plaintiffs could not seek relief, were it passed while a stay was in effect. (ECF No. 63 at 7-8). The Court granted the motion, ruling that it would be better to allow "serious legal questions" impacting the litigation of the case's merits to be answered by the Court of Appeals before proceeding, thus avoiding potentially unnecessary litigation, and also that the parties would not be harmed by a stay. (ECF No. 66 at 1-4).

The Record on Appeal has been transmitted to the Fifth Circuit Court of Appeals, and Defendant/Appellant filed his opening brief on May 30, 2017.  Plaintiffs/Appellees' brief is due on June 29, and Defendant/Appellant's reply brief would be filed no later than July 13. Argument, which is generally scheduled 60 days in advance, has not been set. Concurrently herewith,

Plaintiffs have filed in the Fifth Circuit a motion to Dismiss the Appeal and to Stay Further Briefing Under Fifth Circuit Rule 27.1.3, for reasons discussed *infra*.

## II.    THE PASSAGE OF SB 8

On June 6, 2017, Texas Governor Greg Abbott signed SB 8, attached hereto as Exhibit A, into law. Chapter 697 of SB 8 establishes a regulatory scheme for "embryonic and fetal tissue remains" that is different from, and partially inconsistent with, the Amendments. SB 8, like the Amendments, provides for a limited number of methods of disposal. However, SB 8's definition of "embryonic and fetal tissue remains" is different from the Amendments, as it includes only "an embryo, a fetus, body parts, or organs from a pregnancy," omitting "other tissue from a pregnancy" from its definition. (Ex. A at 14-15).   Also contrary to the Amendments, which define "fetal remains" as a form of "pathological waste," SB 8 states, "[e]mbryonic and fetal tissue remains are not pathological waste under state law." *Id*. at 15. SB 8 also states that ashes "may not be placed in a landfill," in contrast to the Amendments, which do not mention landfills. (*Id*. at 16). Finally, SB 8 provides for the "establish[ment] and maintain[ance of] a registry of participating funeral homes and cemeteries willing to provide free common burial or low-cost private burial [and] private nonprofit organizations that register with the department to provide financial assistance," which are not part of the Amendments. (*Id*. at 16-17).

SB 8 also includes a "Fiscal Note," from the Legislature's Budget Board, attached hereto as Exhibit B, which reports on a survey of "costs associated with implementing the provisions of the bill" in public hospitals, and provides further evidence regarding compliance costs. Ex. B at 2. The Fiscal Notes details survey responses from two hospitals: one indicates costs "per year per hospital range between $218,400-$655,200," and the other states "a cost of $1,060 for cremation and $1,400 for burial," which would have applied to one hundred fetuses over a twelve-month

period. *Id*. These six-figure sums reported in the Fiscal Note are consistent with some of the conflicting evidence about cost discussed in this Court's January 27, 2017 Order, (ECF No. 49 at 18- 21), but also inconsistent with some of that evidence.

SB 8's effective date is September 1, 2017. (Ex. A at 26). The bill also mandates HHSC to establish a "grant program" to provide financial assistance "for costs associated with disposition of "embryonic and fetal tissue remains" by October 1, 2017; and implementing regulations for "disposal of embryonic and fetal tissue remains" by no later than December 1, 2017. (*Id*. at 23). SB 8 also provides that "the disposition of embryonic and fetal tissue remains that occurs before February 1, 2018, is governed by the law in effect immediately before the effective date of this Act, and the former law is continued in effect for that purpose." (*Id*. at 24).

## III.   PLAINTIFFS WILL LOSE THE PROTECTION OF THE PRELIMINARY INJUNCTION UNLESS THE COURT'S OPINION IS AMENDED; THE COURT'S OPINION WILL ALSO BE SUPERSEDED AND THUS UNREVIEWABLE ON APPEAL

SB 8 was not in existence when this Court issued its preliminary injunction, and so was not considered by the parties. Accordingly, the preliminary injunction currently in force does not encompass SB 8. Because SB 8 imposes unconstitutional burdens on Plaintiffs and on their patients' access to pregnancy-related medical care, Plaintiffs will need to seek to modify the preliminary injunction to address those burdens.

Further, many of this Court's findings of fact and conclusions of law regarding the Amendments relied on language that SB 8 requires be repealed.  For example, DSHS's vacillation during proceedings regarding whether "fetal remains" were governed by any or all of the laws applicable to "pathological waste" or to "human remains" supported this Court's ruling that the Amendments were unconstitutionally vague, since it was unclear what permits vendors would need to obtain before being able to legally dispose of "fetal tissue." ECF No. 49 at 12-13. SB 8, in

contrast, states "embryonic and fetal tissue remains are not pathological waste under state law." Ex. A at 15. This differs from the plain text of the Amendments, which defined "fetal remains" as "pathological waste." ECF No. 1-1 at 27. Accordingly, the Court may want to revisit this part of the Court's vagueness ruling as to the Amendments in light of SB 8.

SB 8 also applies to a seemingly narrower scope of institutions (any "health care facility in this state that provides health or medical care to a pregnant woman"), Ex. A at 15, than the Amendments ("health-care facilities"), ECF No. 1-1 at 2. SB 8 also mandates that DSHS establish registries of cemeteries, funeral homes, and crematoriums willing to provide reduced-cost services, and a grant program. These changes may alter the Amendments' impact. Finally, SB 8 requires further rulemaking, to be finished by December 1, 2017, which at a minimum will necessarily repeal the provisions of the Amendments that conflict with the statute, and implement the new requirements that do not exist in SB 8, such as the registries and the grant program. Ex. A at 17-22. The current preliminary injunction will not encompass these new changes to the Amendments.

Further, although SB 8 has not remedied the basic constitutional problem inherent in the State forcing non-medical methods of tissue disposal on non-consenting people seeking pregnancy related medical care, the changed facts brought about by the changed law, and possibly its implementing regulations, may require the Court to hear new evidence and to update its findings of fact as used in the undue burden balancing analysis.

To seek to modify the preliminary injunction, Plaintiffs respectfully move this Court to **LIFT THE STAY**. Should the present motion to lift the Stay be granted, Plaintiffs expect to file a supplemental complaint and a second motion for a preliminary injunction. Before filing those papers, however, Plaintiffs respectfully request a **STATUS CONFERENCE** with the Court to discuss the case, including a briefing schedule; whether DSHS intends to impose any obligations

on Plaintiffs under Chapter 697 of SB 8 or the new regulations before February 1, 2018 (which would affect the briefing schedule); the necessity for any discovery; and the date for another preliminary injunction hearing, if necessary.

Dated: June 8, 2017

Respectfully submitted,

*/s/ Patrick J. O'Connell*

Patrick J. O'Connell
Law Offices of Patrick J. O'Connell PLLC
2525 Wallingwood Drive, Bldg. 14
Austin, Texas 78746
(512) 222-0444
pat@pjofca.com

David Brown*
Molly Duane*
Center for Reproductive Rights
199 Water St. 22nd Floor
New York, NY 10038
(917) 637-3653
dbrown@reprorights.org
mduane@reprorights.org

J. Alexander Lawrence*
Morrison & Foerster LLP
250 W. 55th Street
New York, NY 10019
(212) 336-8638
alawrence@mofo.com

Stephanie Toti
Law Office of Stephanie Toti
88 Atlantic Ave., Ste. 1B
Brooklyn, NY 11201
(516) 967-4110
stephanie_toti@outlook.com

Attorneys for Plaintiffs

* admitted pro hac vice

6

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2017, I electronically filed a copy of the above document with the Clerk of the Court by using the Court's CM/ECF system, which will send a notification to the counsel of record.

*/s/ Patrick J. O'Connell*
Patrick J. O'Connell

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

```
-------------------------------------------------------- x
                                                         :
WHOLE WOMAN'S HEALTH, et al.,                            :
                                                         :         CIVIL ACTION
                        Plaintiffs,                      :
                                                         :         CASE NO. 1:16-CV-01300-SS
            v.                                           :
                                                         :
                                                         :
JOHN HELLERSTEDT, M.D.,                                  :
                                                         :
                        Defendant.                       :
                                                         :
                                                         :
-------------------------------------------------------- X
```

## [PROPOSED] ORDER

     This Court, having considered Plaintiffs' Motion to Lift Stay, and Defendant's response in opposition, and for good cause shown, hereby GRANTS Plaintiffs' motion.

     Accordingly,

          IT IS ORDERED that Plaintiffs' Motion to Lift Stay [#68] is GRANTED;

          IT IS FURTHER ORDERED the STAY IS LIFTED; and

          IT IS FINALLY ORDERED that the parties shall participate in a TELEPHONE CONFERENCE with this Court on the _____ day of _____, 2017, at _____. Counsel for Plaintiffs shall be responsible for arranging the call.

     SIGNED this the _____ day of _____, 2017.


                                    _____

                                    SAM SPARKS
                                    UNITED STATES DISTRICT JUDGE

# Exhibit A

S.B. No. 8

1                              AN ACT
2  relating to certain prohibited abortions and the treatment and
3  disposition of a human fetus, human fetal tissue, and embryonic and
4  fetal tissue remains; creating a civil cause of action; imposing a
5  civil penalty; creating criminal offenses.
6        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
7        SECTION 1.  Section 33.001(1), Family Code, is amended to
8  read as follows:
9            (1)  "Abortion" has the meaning assigned by Section
10 245.002, Health and Safety Code [means the use of any means to
11 terminate the pregnancy of a female known by the attending
12 physician to be pregnant, with the intention that the termination
13 of the pregnancy by those means will with reasonable likelihood
14 cause the death of the fetus].  This definition, as applied in this
15 chapter, [applies only to an unemancipated minor known by the
16 attending physician to be pregnant and] may not be construed to
17 limit a minor's access to contraceptives.
18       SECTION 2.  Section 161.006(b), Family Code, is amended to
19 read as follows:
20       (b)  In this code, "abortion" has the meaning assigned by
21 Section 245.002, Health and Safety Code [means an intentional
22 expulsion of a human fetus from the body of a woman induced by any
23 means for the purpose of causing the death of the fetus].
24       SECTION 3.  Section 170.001(1), Health and Safety Code, is

1

S.B. No. 8

1  amended to read as follows:

2          (1)  "Abortion" has the meaning assigned by Section

3  245.002 [means an act involving the use of an instrument, medicine,

4  drug, or other substance or device developed to terminate the

5  pregnancy of a woman if the act is done with an intention other than

6  to:

7              [(A)  increase the probability of a live birth of

8  the unborn child of the woman;

9              [(B)  preserve the life or health of the child; or

10             [(C)  remove a dead fetus].

11     SECTION 4.  Section 171.002(1), Health and Safety Code, is

12 amended to read as follows:

13         (1)  "Abortion" has the meaning assigned by Section

14 245.002 [means the use of any means to terminate the pregnancy of a

15 female known by the attending physician to be pregnant with the

16 intention that the termination of the pregnancy by those means

17 will, with reasonable likelihood, cause the death of the fetus].

18     SECTION 5.  Section 171.061(1), Health and Safety Code, is

19 amended to read as follows:

20         (1)  "Abortion" has the meaning assigned by Section

21 245.002. This definition, as applied in this subchapter, may not be

22 construed to apply to an act done with the intent to [means the act

23 of using, administering, prescribing, or otherwise providing an

24 instrument, a drug, a medicine, or any other substance, device, or

25 means with the intent to terminate a clinically diagnosable

26 pregnancy of a woman and with knowledge that the termination by

27 those means will, with reasonable likelihood, cause the death of

S.B. No. 8

1  the woman's unborn child.  An act is not an abortion if the act is

2  done with the intent to:

3              [(A)  save the life or preserve the health of an

4  unborn child;

5              [(B)  remove a dead, unborn child whose death was

6  caused by spontaneous abortion;

7              [(C)  remove an ectopic pregnancy; or

8              [(D)]  treat a maternal disease or illness for

9  which a prescribed drug, medicine, or other substance is indicated.

10      SECTION 6.   Chapter 171, Health and Safety Code, is amended

11  by adding Subchapters F and G to read as follows:

12           SUBCHAPTER F.  PARTIAL-BIRTH ABORTIONS

13      Sec. 171.101.  DEFINITIONS.  In this subchapter:

14          (1)  "Partial-birth abortion" means an abortion in

15  which the person performing the abortion:

16              (A)  for the purpose of performing an overt act

17  that the person knows will kill the partially delivered living

18  fetus, deliberately and intentionally vaginally delivers a living

19  fetus until:

20                  (i)  for a head-first presentation, the

21  entire fetal head is outside the body of the mother; or

22                  (ii)  for a breech presentation, any part of

23  the fetal trunk past the navel is outside the body of the mother;

24  and

25              (B)  performs the overt act described in Paragraph

26  (A), other than completion of delivery, that kills the partially

27  delivered living fetus.

3

S.B. No. 8

1      (2)  "Physician" means an individual who is licensed to

2  practice medicine in this state, including a medical doctor and a

3  doctor of osteopathic medicine.

4      Sec. 171.102.  PARTIAL-BIRTH ABORTIONS PROHIBITED.  (a)  A

5  physician or other person may not knowingly perform a partial-birth

6  abortion.

7      (b)  Subsection (a) does not apply to a physician who

8  performs a partial-birth abortion that is necessary to save the

9  life of a mother whose life is endangered by a physical disorder,

10  physical illness, or physical injury, including a life-endangering

11  physical condition caused by or arising from the pregnancy.

12      Sec. 171.103.  CRIMINAL PENALTY.  A person who violates

13  Section 171.102 commits an offense.  An offense under this section

14  is a state jail felony.

15      Sec. 171.104.  CIVIL LIABILITY.  (a)  Except as provided by

16  Subsection (b), the father of the fetus or a parent of the mother of

17  the fetus, if the mother is younger than 18 years of age at the time

18  of the partial-birth abortion, may bring a civil action to obtain

19  appropriate relief, including:

20      (1)  money damages for physical injury, mental anguish,

21  and emotional distress; and

22      (2)  exemplary damages equal to three times the cost of

23  the partial-birth abortion.

24      (b)  A person may not bring or maintain an action under this

25  section if:

26      (1)  the person consented to the partial-birth

27  abortion; or

S.B. No. 8

1      (2)   the person's criminally injurious conduct resulted

2  in the pregnancy.

3      Sec. 171.105.   HEARING.  (a)   A physician who is the subject

4  of a criminal or civil action for a violation of Section 171.102 may

5  request  a  hearing  before  the  Texas  Medical  Board  on  whether  the

6  physician's conduct was necessary to save the life of a mother whose

7  life  was  endangered  by  a  physical  disorder,  physical  illness,  or

8  physical  injury,  including  a  life-endangering  physical  condition

9  caused by or arising from the pregnancy.

10      (b)   The   board's   findings   under   Subsection   (a)   are

11  admissible  in  any  court  proceeding  against  the  physician  arising

12  from that conduct.  On the physician's motion, the court shall delay

13  the beginning of a criminal or civil trial for not more than 60 days

14  for the hearing to be held under Subsection (a).

15      Sec. 171.106.   APPLICABILITY.     A   woman   on   whom   a

16  partial-birth abortion is performed or attempted in violation of

17  this subchapter may not be prosecuted under this subchapter or for

18  conspiracy to commit a violation of this subchapter.

19      SUBCHAPTER G.  DISMEMBERMENT ABORTIONS

20      Sec. 171.151.   DEFINITION.     In   this   subchapter,

21  "dismemberment abortion" means an abortion in which a person, with

22  the purpose of causing the death of an unborn child, dismembers the

23  living unborn child and extracts the unborn child one piece at a

24  time from the uterus through the use of clamps, grasping forceps,

25  tongs,  scissors,  or  a  similar  instrument  that,  through  the

26  convergence  of  two  rigid  levers,  slices,  crushes,  or  grasps,  or

27  performs any combination of those actions on, a piece of the unborn

S.B. No. 8

1  child's body to cut or rip the piece from the body.  The term does
2  not include an abortion that uses suction to dismember the body of
3  an unborn child by sucking pieces of the unborn child into a
4  collection container.  The term includes a dismemberment abortion
5  that is used to cause the death of an unborn child and in which
6  suction is subsequently used to extract pieces of the unborn child
7  after the unborn child's death.
8      Sec. 171.152.  DISMEMBERMENT ABORTIONS PROHIBITED.  (a)  A
9  person may not intentionally perform a dismemberment abortion
10 unless the dismemberment abortion is necessary in a medical
11 emergency.
12     (b)  A woman on whom a dismemberment abortion is performed,
13 an employee or agent acting under the direction of a physician who
14 performs a dismemberment abortion, or a person who fills a
15 prescription or provides equipment used in a dismemberment abortion
16 does not violate Subsection (a).
17     Sec. 171.153.  CRIMINAL PENALTY.  (a)  A person who violates
18 Section 171.152 commits an offense.
19     (b)  An offense under this section is a state jail felony.
20     Sec. 171.154.  CONSTRUCTION OF SUBCHAPTER.  (a)  This
21 subchapter shall be construed, as a matter of state law, to be
22 enforceable to the maximum possible extent consistent with but not
23 further than federal constitutional requirements, even if that
24 construction is not readily apparent, as such constructions are
25 authorized only to the extent necessary to save the subchapter from
26 judicial invalidation.  Judicial reformation of statutory language
27 is explicitly authorized only to the extent necessary to save the

S.B. No. 8

1  statutory provision from invalidity.

2  (b)  If any court determines that a provision of this

3  subchapter is unconstitutionally vague, the court shall interpret

4  the provision, as a matter of state law, to avoid the vagueness

5  problem and shall enforce the provision to the maximum possible

6  extent.  If a federal court finds any provision of this subchapter

7  or its application to any person, group of persons, or

8  circumstances to be unconstitutionally vague and declines to impose

9  the saving construction described by this subsection, the Supreme

10 Court of Texas shall provide an authoritative construction of the

11 objectionable statutory provisions that avoids the constitutional

12 problems while enforcing the statute's restrictions to the maximum

13 possible extent and shall agree to answer any question certified

14 from a federal appellate court regarding the statute.

15 (c)  A state executive or administrative official may not

16 decline to enforce this subchapter, or adopt a construction of this

17 subchapter in a way that narrows its applicability, based on the

18 official's own beliefs concerning the requirements of the state or

19 federal constitution, unless the official is enjoined by a state or

20 federal court from enforcing this subchapter.

21 (d)  This subchapter may not be construed to:

22 (1)  authorize the prosecution of or a cause of action

23 to be brought against a woman on whom an abortion is performed or

24 induced in violation of this subchapter; or

25 (2)  create or recognize a right to abortion or a right

26 to a particular method of abortion.

27 SECTION 7.  Subtitle H, Title 2, Health and Safety Code, is

S.B. No. 8

1  amended by adding Chapter 173 to read as follows:

2          CHAPTER 173.  DONATION OF HUMAN FETAL TISSUE

3      Sec. 173.001.  DEFINITIONS.  In this chapter:

4          (1)  "Authorized facility" means:

5              (A)  a hospital licensed under Chapter 241;

6              (B)  a hospital maintained or operated by this

7  state or an agency of this state;

8              (C)  an ambulatory surgical center licensed under

9  Chapter 243; or

10             (D)  a birthing center licensed under Chapter 244.

11         (2)  "Human fetal tissue" means any gestational human

12  organ, cell, or tissue from an unborn child.  The term does not

13  include:

14             (A)  supporting cells or tissue derived from a

15  pregnancy or associated maternal tissue that is not part of the

16  unborn child; or

17             (B)  the umbilical cord or placenta, provided that

18  the umbilical cord or placenta is not derived from an elective

19  abortion.

20     Sec. 173.002.  APPLICABILITY.  This chapter does not apply

21  to:

22         (1)  human fetal tissue obtained for diagnostic or

23  pathological testing;

24         (2)  human fetal tissue obtained for a criminal

25  investigation;

26         (3)  human fetal tissue or human tissue obtained during

27  pregnancy or at delivery of a child, provided the tissue is obtained

S.B. No. 8

1   by an accredited public or private institution of higher education

2   for use in research approved by an institutional review board or

3   another appropriate board, committee, or body charged with

4   oversight applicable to the research; or

5           (4) cell lines derived from human fetal tissue or

6   human tissue existing on September 1, 2017, that are used by an

7   accredited public or private institution of higher education in

8   research approved by an institutional review board or another

9   appropriate board, committee, or body charged with oversight

10  applicable to the research.

11      Sec. 173.003.  ENFORCEMENT.   (a)  The department shall

12  enforce this chapter.

13      (b)  The attorney general, on request of the department or a

14  local law enforcement agency, may assist in the investigation of a

15  violation of this chapter.

16      Sec. 173.004.  PROHIBITED DONATION.  A person may not donate

17  human fetal tissue except as authorized by this chapter.

18      Sec. 173.005.  DONATION BY AUTHORIZED FACILITY.  (a)  Only

19  an authorized facility may donate human fetal tissue.  An

20  authorized facility may donate human fetal tissue only to an

21  accredited public or private institution of higher education for

22  use in research approved by an institutional review board or

23  another appropriate board, committee, or body charged with

24  oversight applicable to the research.

25      (b)  An authorized facility may not donate human fetal tissue

26  obtained from an elective abortion.

27      Sec. 173.006.  INFORMED CONSENT REQUIRED.  An authorized

S.B. No. 8

1    facility may not donate human fetal tissue under this chapter

2    unless the facility has obtained the written, voluntary, and

3    informed consent of the woman from whose pregnancy the fetal tissue

4    is obtained.   The consent must be provided on a standard form

5    prescribed by the department.

6        Sec. 173.007.  CRIMINAL PENALTY.  (a)   A person commits an

7    offense if the person:

8            (1)   offers a woman monetary or other consideration to:

9                (A)   have an abortion for the purpose of donating

10   human fetal tissue; or

11               (B)   consent to the donation of human fetal

12   tissue; or

13           (2)   knowingly or intentionally solicits or accepts

14   tissue from a fetus gestated solely for research purposes.

15       (b)   An offense under this section is a Class A misdemeanor

16   punishable by a fine of not more than $10,000.

17       (c)   With the consent of the appropriate local county or

18   district attorney, the attorney general has concurrent

19   jurisdiction with that consenting local prosecutor to prosecute an

20   offense under this section.

21       Sec. 173.008.  RECORD RETENTION.   Unless another law

22   requires a longer period of record retention, an authorized

23   facility may not dispose of any medical record relating to a woman

24   who consents to the donation of human fetal tissue before:

25           (1)   the seventh anniversary of the date consent was

26   obtained under Section 173.006; or

27           (2)   if the woman was younger than 18 years of age on

10

S.B. No. 8

1   the date consent was obtained under Section 173.006, the later of:

2           (A)   the woman's 23rd birthday; or

3           (B)   the seventh anniversary of the date consent

4   was obtained.

5       Sec. 173.009.  ANNUAL REPORT.  An authorized facility that

6   donates human fetal tissue under this chapter shall submit an

7   annual report to the department that includes for each donation:

8           (1)   the specific type of fetal tissue donated; and

9           (2)   the accredited public or private institution of

10  higher education that received the donation.

11      SECTION 8.  Section 245.002, Health and Safety Code, is

12  amended by amending Subdivisions (1) and (4-a) and adding

13  Subdivision (4-b) to read as follows:

14          (1)  "Abortion" means the act of using or prescribing

15  an instrument, a drug, a medicine, or any other substance, device,

16  or means with the intent to cause the death of an unborn child of a

17  woman known to be pregnant [an act or procedure performed after

18  pregnancy has been medically verified and with the intent to cause

19  the termination of a pregnancy other than for the purpose of either

20  the birth of a live fetus or removing a dead fetus].  The term does

21  not include birth control devices or oral contraceptives.  An act is

22  not an abortion if the act is done with the intent to:

23          (A)   save the life or preserve the health of an

24  unborn child;

25          (B)   remove a dead, unborn child whose death was

26  caused by spontaneous abortion; or

27          (C)   remove an ectopic pregnancy.

S.B. No. 8

1          (4-a)  "Ectopic pregnancy" means the implantation of a
2   fertilized egg or embryo outside of the uterus.

3          (4-b)  "Executive  commissioner"  means  the  executive
4   commissioner of the Health and Human Services Commission.

5          SECTION 9.  Section 245.005(e), Health and Safety Code, is
6   amended to read as follows:

7          (e)  As a condition for renewal of a license, the licensee
8   must submit to the department the annual license renewal fee and an
9   annual  report[, including the report required under Section
10  245.011].

11         SECTION 10.  The  heading  to  Section  245.011,  Health  and
12  Safety Code, is amended to read as follows:

13         Sec. 245.011.  PHYSICIAN  REPORTING  REQUIREMENTS;  CRIMINAL
14  PENALTY.

15         SECTION 11.  Section  245.011,  Health  and  Safety  Code,  is
16  amended by amending Subsections (a), (b), (d), and (e) and adding
17  Subsections (f) and (g) to read as follows:

18         (a)  A physician who performs an abortion at an [Each]
19  abortion facility must complete and submit a monthly [an annual]
20  report to the department on each abortion [that is] performed by the
21  physician at the abortion facility.  The report must be submitted on
22  a form provided by the department.

23         (b)  The report may not identify by any means [the physician
24  performing the abortion or] the patient.

25         (d)  Except as provided by Section 245.023, all information
26  and  records  held  by  the  department  under  this  chapter  are
27  confidential and are not open records for the purposes of Chapter

12

S.B. No. 8

1    552, Government Code.  That information may not be released or made

2    public on subpoena or otherwise, except that release may be made:

3              (1)  for statistical purposes, but only if a person,

4    patient, physician performing an abortion, or abortion facility is

5    not identified;

6              (2)  with   the   consent   of   each  person,  patient,

7    physician, and abortion facility identified in the information

8    released;

9              (3)  to medical personnel, appropriate state agencies,

10   or county and district courts to enforce this chapter; or

11             (4)  to appropriate state licensing boards to enforce

12   state licensing laws.

13   (e)  A person commits an offense if the person violates

14   Subsection (b), (c), or (d) [this section].  An offense under this

15   subsection is a Class A misdemeanor.

16        (f)  Not later than the 15th day of each month, a physician

17   shall submit to the department the report required by this section

18   for each abortion performed by the physician at an abortion

19   facility in the preceding calendar month.

20        (g)  The department shall establish and maintain a secure

21   electronic reporting system for the submission of the reports

22   required by this section.  The department shall adopt procedures to

23   enforce this section and to ensure that only physicians who perform

24   one or more abortions during the preceding calendar month are

25   required to file the reports under this section for that month.

26        SECTION 12.  Chapter 245, Health and Safety Code, is amended

27   by adding Sections 245.0115 and 245.0116 to read as follows:

13

S.B. No. 8

1      Sec. 245.0115.  NOTIFICATION.  Not later than the seventh

2  day after the date the report required by Section 245.011 is due,

3  the commissioner of state health services shall notify the Texas

4  Medical Board of a violation of that section.

5      Sec. 245.0116.  DEPARTMENT REPORT.  (a)  The department

6  shall publish on its Internet website a monthly report containing

7  aggregate data of the information in the reports submitted under

8  Section 245.011.

9      (b)  The department's monthly report may not identify by any

10  means an abortion facility, a physician performing the abortion, or

11  a patient.

12      SECTION 13.  Subtitle B, Title 8, Health and Safety Code, is

13  amended by adding Chapter 697 to read as follows:

14  CHAPTER 697.  DISPOSITION OF EMBRYONIC AND FETAL TISSUE REMAINS

15      Sec. 697.001.  PURPOSE.  The purpose of this chapter is to

16  express the state's profound respect for the life of the unborn by

17  providing for a dignified disposition of embryonic and fetal tissue

18  remains.

19      Sec. 697.002.  DEFINITIONS.  In this chapter:

20      (1)  "Cremation" means the irreversible process of

21  reducing remains to bone fragments through direct flame, extreme

22  heat, and evaporation.

23      (2)  "Department" means the Department of State Health

24  Services.

25      (3)  "Embryonic and fetal tissue remains" means an

26  embryo, a fetus, body parts, or organs from a pregnancy that

27  terminates in the death of the embryo or fetus and for which the

14

S.B. No. 8

1  issuance of a fetal death certificate is not required by state law.

2  The term does not include the umbilical cord, placenta, gestational

3  sac, blood, or body fluids.

4       (4) "Executive commissioner" means the executive

5  commissioner of the Health and Human Services Commission.

6       (5) "Incineration" means the process of burning

7  remains in an incinerator.

8       (6) "Interment" means the disposition of remains by

9  entombment, burial, or placement in a niche.

10      (7) "Steam disinfection" means the act of subjecting

11  remains to steam under pressure to disinfect the remains.

12  Sec. 697.003. APPLICABILITY OF OTHER LAW. Embryonic and

13  fetal tissue remains are not pathological waste under state law.

14  Unless otherwise provided by this chapter, Chapters 711 and 716 of

15  this code and Chapter 651, Occupations Code, do not apply to the

16  disposition of embryonic and fetal tissue remains.

17  Sec. 697.004. DISPOSITION OF EMBRYONIC AND FETAL TISSUE

18  REMAINS. (a) Subject to Section 241.010, a health care facility

19  in this state that provides health or medical care to a pregnant

20  woman shall dispose of embryonic and fetal tissue remains that are

21  passed or delivered at the facility by:

22      (1) interment;

23      (2) cremation;

24      (3) incineration followed by interment; or

25      (4) steam disinfection followed by interment.

26  (b) The ashes resulting from the cremation or incineration

27  of embryonic and fetal tissue remains:

S.B. No. 8

1              (1)  may be interred or scattered in any manner as

2   authorized by law for human remains; and

3              (2)  may not be placed in a landfill.

4        (c)  A health care facility responsible for disposing of

5   embryonic and fetal tissue remains may coordinate with an entity in

6   the registry established under Section 697.005 in an effort to

7   offset the cost associated with burial or cremation of the

8   embryonic and fetal tissue remains of an unborn child.

9        (d)  Notwithstanding any other law, the umbilical cord,

10  placenta, gestational sac, blood, or body fluids from a pregnancy

11  terminating in the death of the embryo or fetus for which the

12  issuance of a fetal death certificate is not required by state law

13  may be disposed of in the same manner as and with the embryonic and

14  fetal tissue remains from that same pregnancy as authorized by this

15  chapter.

16       Sec. 697.005.  BURIAL OR CREMATION ASSISTANCE REGISTRY.  The

17  department shall:

18             (1)  establish and maintain a registry of:

19             (A)  participating funeral homes and cemeteries

20  willing to provide free common burial or low-cost private burial;

21  and

22             (B)  private nonprofit organizations that

23  register with the department to provide financial assistance for

24  the costs associated with burial or cremation of the embryonic and

25  fetal tissue remains of an unborn child; and

26             (2)  make the registry information available on request

27  to a physician, health care facility, or agent of a physician or

16

S.B. No. 8

1  health care facility.

2       Sec. 697.006.  ETHICAL FETAL REMAINS GRANT PROGRAM.  The

3  department shall develop a grant program that uses private

4  donations to provide financial assistance for the costs associated

5  with disposing of embryonic and fetal tissue remains.

6       Sec. 697.007.  SUSPENSION OR REVOCATION OF LICENSE.  The

7  department may suspend or revoke the license of a health care

8  facility that violates this chapter or a rule adopted under this

9  chapter.

10      Sec. 697.008.  CIVIL PENALTY.  (a)  A person that violates

11  this chapter or a rule adopted under this chapter is liable for a

12  civil penalty in an amount of $1,000 for each violation.

13      (b)  The attorney general, at the request of the department,

14  may sue to collect the civil penalty.  The attorney general may

15  recover reasonable expenses incurred in collecting the civil

16  penalty, including court costs, reasonable attorney's fees,

17  investigation costs, witness fees, and disposition expenses.

18      Sec. 697.009.  RULES.  The executive commissioner shall

19  adopt rules to implement this chapter.

20      SECTION 14.  Section 164.052(a), Occupations Code, is

21  amended to read as follows:

22      (a)  A physician or an applicant for a license to practice

23  medicine commits a prohibited practice if that person:

24           (1)  submits to the board a false or misleading

25  statement, document, or certificate in an application for a

26  license;

27           (2)  presents to the board a license, certificate, or

17

S.B. No. 8

1 diploma that was illegally or fraudulently obtained;

2          (3)  commits fraud or deception in taking or passing an
3 examination;

4          (4)  uses alcohol or drugs in an intemperate manner
5 that, in the board's opinion, could endanger a patient's life;

6          (5)  commits unprofessional or dishonorable conduct
7 that is likely to deceive or defraud the public, as provided by
8 Section 164.053, or injure the public;

9          (6)  uses an advertising statement that is false,
10 misleading, or deceptive;

11          (7)  advertises professional superiority or the
12 performance of professional service in a superior manner if that
13 advertising is not readily subject to verification;

14          (8)  purchases, sells, barters, or uses, or offers to
15 purchase, sell, barter, or use, a medical degree, license,
16 certificate, or diploma, or a transcript of a license, certificate,
17 or diploma in or incident to an application to the board for a
18 license to practice medicine;

19          (9)  alters, with fraudulent intent, a medical license,
20 certificate, or diploma, or a transcript of a medical license,
21 certificate, or diploma;

22          (10)  uses a medical license, certificate, or diploma,
23 or a transcript of a medical license, certificate, or diploma that
24 has been:

25               (A)  fraudulently purchased or issued;

26               (B)  counterfeited; or

27               (C)  materially altered;

18

S.B. No. 8

1    (11) impersonates or acts as proxy for another person
2 in an examination required by this subtitle for a medical license;

3    (12) engages in conduct that subverts or attempts to
4 subvert an examination process required by this subtitle for a
5 medical license;

6    (13) impersonates a physician or permits another to
7 use the person's license or certificate to practice medicine in
8 this state;

9    (14) directly or indirectly employs a person whose
10 license to practice medicine has been suspended, canceled, or
11 revoked;

12    (15) associates in the practice of medicine with a
13 person:

14     (A) whose license to practice medicine has been
15 suspended, canceled, or revoked; or

16     (B) who has been convicted of the unlawful
17 practice of medicine in this state or elsewhere;

18    (16) performs or procures a criminal abortion, aids or
19 abets in the procuring of a criminal abortion, attempts to perform
20 or procure a criminal abortion, or attempts to aid or abet the
21 performance or procurement of a criminal abortion;

22    (17) directly or indirectly aids or abets the practice
23 of medicine by a person, partnership, association, or corporation
24 that is not licensed to practice medicine by the board;

25    (18) performs an abortion on a woman who is pregnant
26 with a viable unborn child during the third trimester of the
27 pregnancy unless:

19

S.B. No. 8

1          (A)  the  abortion  is  necessary  to  prevent  the
2  death of the woman;

3          (B)  the  viable  unborn  child  has  a  severe,
4  irreversible brain impairment; or

5          (C)  the  woman  is  diagnosed  with  a  significant
6  likelihood of suffering imminent severe, irreversible brain damage
7  or imminent severe, irreversible paralysis;

8          (19)  performs  an  abortion  on  an  unemancipated  minor
9  without  the  written  consent  of  the  child's  parent,  managing
10  conservator,  or  legal  guardian  or  without  a  court  order,  as
11  provided  by  Section  33.003  or  33.004,  Family  Code,  unless  the
12  abortion  is  necessary  due  to  a  medical  emergency,  as  defined  by
13  Section 171.002, Health and Safety Code;

14          (20)  otherwise  performs  an  abortion  on  an
15  unemancipated minor in violation of Chapter 33, Family Code; or

16          (21)  performs  or  induces  or  attempts  to  perform  or
17  induce  an  abortion  in  violation  of  Subchapter  C, F, or G, Chapter
18  171, Health and Safety Code.

19      SECTION 15.  Section  164.055(b),  Occupations  Code,  is
20  amended to read as follows:

21      (b)  The sanctions provided by Subsection (a) are in addition
22  to any other grounds for refusal to admit persons to examination
23  under  this  subtitle  or  to  issue  a  license  or  renew  a  license  to
24  practice  medicine  under  this  subtitle.   The  criminal  penalties
25  provided by Section 165.152 do not apply to a violation of Section
26  170.002, Health and Safety Code, or Subchapter C, F, or G, Chapter
27  171, Health and Safety Code.

20

S.B. No. 8

1       SECTION 16.  Section 48.02(a), Penal Code, is amended to

2   read as follows:

3       (a)  In this section, "human ["Human] organ" means the human

4   kidney, liver, heart, lung, pancreas, eye, bone, skin, [fetal

5   tissue,] or any other human organ or tissue, but does not include

6   hair  or  blood,  blood  components  (including  plasma),  blood

7   derivatives, or blood reagents.  The term does not include human

8   fetal tissue as defined by Section 48.03.

9       SECTION 17.  Chapter 48, Penal Code, is amended by adding

10  Section 48.03 to read as follows:

11      Sec. 48.03.  PROHIBITION ON PURCHASE AND SALE OF HUMAN FETAL

12  TISSUE.  (a)  In this section, "human fetal tissue" has the meaning

13  assigned by Section 173.001, Health and Safety Code.

14      (b)  A person commits an offense if the person knowingly

15  offers  to  buy,  offers  to  sell,  acquires,  receives,  sells,  or

16  otherwise transfers any human fetal tissue for economic benefit.

17      (c)  An offense under this section is a state jail felony.

18      (d)  It is a defense to prosecution under this section that

19  the actor:

20          (1)  is  an  employee  of  or  under  contract  with  an

21  accredited public or private institution of higher education; and

22          (2)  acquires,  receives,  or  transfers  human  fetal

23  tissue solely for the purpose of fulfilling a donation authorized

24  by Section 173.005, Health and Safety Code.

25      (e)  This section does not apply to:

26          (1)  human  fetal  tissue  acquired,  received,  or

27  transferred solely for diagnostic or pathological testing;

S.B. No. 8

1        (2) human fetal tissue acquired, received, or

2 transferred solely for the purposes of a criminal investigation;

3        (3) human fetal tissue acquired, received, or

4 transferred solely for the purpose of disposing of the tissue in

5 accordance with state law or rules applicable to the disposition of

6 human fetal tissue remains;

7        (4) human fetal tissue or human tissue acquired during

8 pregnancy or at delivery of a child, provided the tissue is acquired

9 by an accredited public or private institution of higher education

10 for use in research approved by an institutional review board or

11 another appropriate board, committee, or body charged with

12 oversight applicable to the research; or

13        (5) cell lines derived from human fetal tissue or

14 human tissue existing on September 1, 2017, that are used by an

15 accredited public or private institution of higher education in

16 research approved by an institutional review board or another

17 appropriate board, committee, or body charged with oversight

18 applicable to the research.

19       (f) With the consent of the appropriate local county or

20 district attorney, the attorney general has concurrent

21 jurisdiction with that consenting local prosecutor to prosecute an

22 offense under this section.

23      SECTION 18. (a) Not later than December 1, 2017, the

24 executive commissioner of the Health and Human Services Commission

25 shall adopt any rules necessary to implement Section 245.011,

26 Health and Safety Code, as amended by this Act, and Chapters 173 and

27 697, Health and Safety Code, as added by this Act.

22

S.B. No. 8

1      (b)  The Department of State Health Services shall:

2           (1)  as soon as practicable after the effective date of
3      this Act, develop the electronic reporting system required by
4      Section 245.011, Health and Safety Code, as amended by this Act;

5           (2)  not later than October 1, 2017, establish the
6      grant program required by Section 697.006, Health and Safety Code,
7      as added by this Act;

8           (3)  not later than December 1, 2017, prescribe the
9      standard consent form required by Section 173.006, Health and
10     Safety Code, as added by this Act; and

11          (4)  not later than February 1, 2018, begin to award
12     grants under the grant program described by Subdivision (2) of this
13     subsection.

14     SECTION 19.  (a)  Subchapters F and G, Chapter 171, Health
15     and Safety Code, as added by this Act, apply only to an abortion
16     performed on or after the effective date of this Act.  An abortion
17     performed before the effective date of this Act is governed by the
18     law in effect immediately before the effective date of this Act, and
19     that law is continued in effect for that purpose.

20     (b)  Sections 173.003, 173.004, 173.005, and 173.006, Health
21     and Safety Code, as added by this Act, apply to a donation of human
22     fetal tissue that occurs on or after the effective date of this Act,
23     regardless of whether the human fetal tissue was acquired before,
24     on, or after that date.

25     (c)  An authorized facility is not required to make an
26     initial annual report under Section 173.009, Health and Safety
27     Code, as added by this Act, before January 1, 2019.

23

S.B. No. 8

1    (d)  Chapter 697, Health and Safety Code, as added by this
2    Act, applies only to the disposition of embryonic and fetal tissue
3    remains that occurs on or after February 1, 2018.  The disposition
4    of embryonic and fetal tissue remains that occurs before February
5    1, 2018, is governed by the law in effect immediately before the
6    effective date of this Act, and the former law is continued in
7    effect for that purpose.

8    (e)  Chapter 48, Penal Code, as amended by this Act, applies
9    only to an offense committed on or after the effective date of this
10   Act.  An offense committed before the effective date of this Act is
11   governed by the law in effect on the date the offense was committed,
12   and the former law is continued in effect for that purpose.  For
13   purposes of this subsection, an offense was committed before the
14   effective date of this Act if any element of the offense occurred
15   before that date.

16   SECTION 20.  It is the intent of the legislature that every
17   provision, section, subsection, sentence, clause, phrase, or word
18   in this Act, and every application of the provisions in this Act to
19   each person or entity, are severable from each other.  If any
20   application of any provision in this Act to any person, group of
21   persons, or circumstances is found by a court to be invalid for any
22   reason, the remaining applications of that provision to all other
23   persons and circumstances shall be severed and may not be affected.

24   SECTION 21.  (a)  If some or all of the provisions of this
25   Act are ever temporarily or permanently restrained or enjoined by
26   judicial order, all other provisions of Texas law regulating or
27   restricting abortion shall be enforced as though the restrained or

24

S.B. No. 8

1  enjoined provisions had not been adopted; provided, however, that

2  whenever the temporary or permanent restraining order or injunction

3  is stayed or dissolved, or otherwise ceases to have effect, the

4  provisions shall have full force and effect.

5      (b)  Mindful of Leavitt v. Jane L., 518 U.S. 137 (1996), in

6  which in the context of determining the severability of a state

7  statute regulating abortion the United States Supreme Court held

8  that an explicit statement of legislative intent is controlling, it

9  is the intent of the legislature that every provision, section,

10  subsection, sentence, clause, phrase, or word in this Act, and

11  every application of the provisions in this Act, are severable from

12  each other.  If any application of any provision in this Act to any

13  person, group of persons, or circumstances is found by a court to be

14  invalid, the remaining applications of that provision to all other

15  persons and circumstances shall be severed and may not be affected.

16  All constitutionally valid applications of this Act shall be

17  severed from any applications that a court finds to be invalid,

18  leaving the valid applications in force, because it is the

19  legislature's intent and priority that the valid applications be

20  allowed to stand alone.  Even if a reviewing court finds a provision

21  of this Act to impose an undue burden in a large or substantial

22  fraction of relevant cases, the applications that do not present an

23  undue burden shall be severed from the remaining provisions and

24  shall remain in force, and shall be treated as if the legislature

25  had enacted a statute limited to the persons, group of persons, or

26  circumstances for which the statute's application does not present

27  an undue burden.  The legislature further declares that it would

S.B. No. 8

1  have passed this Act, and each provision, section, subsection,

2  sentence, clause, phrase, or word, and all constitutional

3  applications of this Act, irrespective of the fact that any

4  provision, section, subsection, sentence, clause, phrase, or word,

5  or applications of this Act, were to be declared unconstitutional

6  or to represent an undue burden.

7       (c)  If any provision of this Act is found by any court to be

8  unconstitutionally vague, then the applications of that provision

9  that do not present constitutional vagueness problems shall be

10  severed and remain in force.

11       SECTION 22.  This Act takes effect September 1, 2017.

26

S.B. No. 8

_____        _____
   President of the Senate                Speaker of the House

    I hereby certify that S.B. No. 8 passed the Senate on March 15, 2017, by the following vote:  Yeas 24, Nays 6; and that the Senate concurred in House amendments on May 26, 2017, by the following vote: Yeas 22, Nays 9.

                                _____
                                    Secretary of the Senate

    I hereby certify that S.B. No. 8 passed the House, with amendments, on May 20, 2017, by the following vote:  Yeas 93, Nays 45, one present not voting.

                                  _____
                                    Chief Clerk of the House

Approved:

_____
            Date

_____
          Governor

# Exhibit B

**LEGISLATIVE BUDGET BOARD**
**Austin, Texas**

**FISCAL NOTE, 85TH LEGISLATIVE REGULAR SESSION**

**May 21, 2017**

**TO:** Honorable Dan Patrick, Lieutenant Governor, Senate

**FROM:** Ursula Parks, Director, Legislative Budget Board

**IN RE:** **SB8** by Schwertner (Relating to certain prohibited abortions and the treatment and disposition of a human fetus, human fetal tissue, and embryonic and fetal tissue remains; creating a civil cause of action; imposing a civil penalty; creating criminal offenses.), **As Passed 2nd House**

---

**No significant fiscal implication to the State is anticipated.**

---

The bill would prohibit certain partial-birth abortions, would classify the violation of that prohibition as a state jail felony, and would authorize civil action against a physician who conducted the prohibited procedure. The bill would allow a physician to seek a hearing before the Texas Medical Board to determine medical necessity of the procedure. The bill would add partial-birth abortions to the list of prohibited actions applicable to physicians or applicants for a license to practice medicine, making them subject to disciplinary action by the Texas Medical Board or the revoking of their license. The bill would prohibit certain dismemberment abortions and would establish a criminal penalty (state jail felony) for a violation of the prohibition. The bill would add dismemberment abortions to the list of prohibited actions applicable to physicians or applicants for a license to practice medicine, making them subject to disciplinary action by the Texas Medical Board or the revoking of their license. The bill would establish requirements governing the donation of human fetal tissue and would create a Class A misdemeanor offense for committing certain acts related to fetal tissue donation. The Department of State Health Services (DSHS) would be required to develop a standardized consent form for the donation of human fetal tissue. The bill would require certain facilities to submit annual reports to DSHS regarding fetal tissue donations. The bill would prohibit the sale or trade of human fetal tissue and would classify the knowing violation of that prohibition as a state jail felony. The bill would authorize the Attorney General to assist in certain investigations and prosecute certain offenses related to donation or trade/sale of fetal tissue. The bill would require health care facilities to dispose of fetal remains following certain criteria. DSHS would be required to create and maintain a registry of certain entities that can assist with costs associated with burial or cremation of fetal remains. Additionally, DSHS would be required to make the registry information available to certain parties on request. DSHS would be required to develop a grant program that uses private donations to provide financial assistance for the costs associated with fetal remains disposition by October 1, 2017 and begin to award grants by February 1, 2018. DSHS would be permitted to suspend or revoke the licenses of health care facilities that do not comply with fetal remains disposition criteria. The non-complying facility would be liable for a civil penalty for each violation and, at the request of DSHS, the Attorney General would be allowed to file a suit to collect the penalty. The bill would amend various sections of the Health and Safety Code and the Family Code to update the definition of abortion. The bill would amend Chapter 245 of the Health and Safety Code and require certain physicians that perform abortions to submit monthly reports to DSHS,

rather than on an annual basis. DSHS would be required to establish an electronic reporting system for report submissions. DSHS would be required to notify the Texas Medical Board of any physicians that violate the reporting requirement. DSHS would be required to publish a monthly report of aggregated data from the reports on its Internet website. The executive commissioner of the Health and Human Services Commission (HHSC) would be required to adopt any rules necessary to implement certain provisions of the bill by December 1, 2017.

According to DSHS, implementing and maintaining the grant program will require additional staffing. It is assumed the cost of providing grants under the grant program would be dependent on the level of donations received, which cannot be estimated at this time; however, it is assumed there would be no net fiscal impact as all donations would be distributed as grants. According to DSHS, technology costs will be required to create the electronic reporting system for physicians report submissions. According to DSHS, additional staff will be required to validate data with abortion providers on a monthly basis and to prepare the monthly reports to be published on their Internet website. It is assumed that these costs can be absorbed by the agency.

According to HHSC, the University of Texas System, the Office of Court Administration, the Texas Medical Board, the Texas Department of Criminal Justice, and the Office of Attorney General, the provisions of the bill can be implemented within existing resources. This analysis assumes the provisions of the bill addressing felony sanctions for criminal offenses would not result in a significant impact on state correctional agencies.

## Local Government Impact

According to the Texas Association of Counties, the fiscal impact to counties to implement the provisions of the bill would not be significant.

Under the provisions of the bill, an offense would be a Class A misdemeanor, punishable by a fine of not more than $10,000. Costs associated with enforcement and prosecution could likely be absorbed within existing resources. Revenue gain from fines imposed and collected is not anticipated to have a significant fiscal implication.

Certain hospitals that are units of local government reported via survey by the Texas Hospital Association (THA) estimates of costs associated with implementing the provisions of the bill: In the survey, Texas hospital number 1 indicated 1680 fetal remains specimens per year. For each burial, costs range between $130-$390 depending on which funeral home is used. Thus, THA reported the burial costs per year per hospital range between $218,400-$655,200.

In the same survey, THA indicated that Texas hospital number 2 reported that their existing funeral home contract specifies a cost of $1,060 for cremation and $1,400 for burial. In the last 12 months, hospital number 2 handled 100 fetuses of less than 350 grams not including specimens of fetal tissue, which are not currently tracked.

**Source Agencies:**   212 Office of Court Administration, Texas Judicial Council, 302 Office of the Attorney General, 503 Texas Medical Board, 529 Health and Human Services Commission, 537 State Health Services, Department of, 696 Department of Criminal Justice, 720 The University of Texas System Administration

**LBB Staff:**   UP, JPo, AG, LR, RGU, KCA, JSm, JGA