IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WHOLE WOMAN'S HEALTH, ET AL., | § | |
|     *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:16-cv-01300-DAE |
| | § | |
| JOHN HELLERSTEDT, M.D., | § | |
|     *Defendant*. | § | |

**RESPONSE TO PLAINTIFFS' SECOND MOTION FOR A
PRELIMINARY INJUNCTION, OR IN THE ALTERNATIVE A
TEMPORARY RESTRAINING ORDER**

# TABLE OF CONTENTS

Page

Index of Authorities ...................................................................................... ii

Statement of Facts ......................................................................................... 1

I.   Prior Methods of Disposition of Fetal Tissue ...................................... 1

II.  Plaintiffs' Original Complaint and Preliminary Injunction ................. 3

III. Senate Bill 8 and Chapter 697 of the Texas Health & Safety Code .... 6

IV.  Plaintiffs' First Amended Complaint ................................................... 9

Argument ....................................................................................................... 9

I.   The Court Lacks Jurisdiction Over Several of Plaintiffs' Claims. ..... 10

     A.   Plaintiffs' claim regarding abortion access is not ripe. ............... 11

     B.   Plaintiffs lack standing to assert the beliefs of their patients. ..... 12

     C.   Plaintiffs' challenge to the Amendments will soon become moot. ..... 13

II.  Plaintiffs Are Not Substantially Likely to Prevail on Any of Their
     Constitutional Claims ......................................................................... 13

     A.   Plaintiffs will not prevail on their personal liberty claim. .......... 14

          1.   Plaintiffs must prove that the State has imposed a substantial
               obstacle to abortion access. ................................................. 14

          2.   Chapter 697 furthers the State's interest in respecting unborn
               life. ...................................................................................... 17

          3.   Chapter 697 does not create an undue burden. .................... 18

     B.   Plaintiffs' vagueness claims are meritless .................................. 22

III. Plaintiffs Have Not Proven That the Remaining Factors Favor an
     Injunction. .......................................................................................... 24

IV.  If the Court Concludes That Injunctive Relief Is Necessary, It Should
     Sever the Portions of the Law It Finds Likely To Be Unconstitutional. ..... 25

Conclusion ................................................................................................... 26

Certificate of Filing and Service .................................................................. 28

# INDEX OF AUTHORITIES

Page(s)

**Cases**

*Ayotte v. Planned Parenthood of N. New Eng.*,
  546 U.S. 320 (2006) ......................................................................... 25

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ......................................................................... 25

*Canfield Aviation, Inc. v. Nat'l Transp. Safety Bd.*,
  854 F.2d 745 (5th Cir. 1988) .......................................................... 12

*Coates v. City of Cincinnati*,
  402 U.S. 611 (1971) ......................................................................... 23

*Elk Grove Unified Sch. Dist. v. Newdow*,
  542 U.S. 1 (2004) ............................................................................. 13

*Fernandez-Montes v. Allied Pilots Ass'n*,
  987 F.2d 278 (5th Cir. 1993) .......................................................... 10

*Frisby v. Schultz*,
  487 U.S. 474 (1988) ......................................................................... 22

*Gonzales v. Carhart*,
  550 U.S. 124 (2007) ........................................... 1, 14, 15, 16, 18, 19, 20

*Harlingen Family Dentistry v. Tex. Health & Human Servs. Comm'n*,
  452 S.W.3d 479 (Tex. App.—Austin 2014, pet. dism'd) ..................... 23

*Harris v. McRae*,
  448 U.S. 297 (1980) ......................................................................... 17

*Hopkins v. Jegley*,
  No. 4:17-00404-KGB, 2017 WL 3220445 (E.D. Ark. July 28, 2017),
  appeal pending, No. 17-2879 (8th Cir. Aug. 28, 2017) ................... 17-18

*John Doe #1 v. Veneman*,
  380 F.3d 807 (5th Cir. 2004) .......................................................... 25

*Johnson v. United States*,
  135 S. Ct. 2551 (2015) .................................................................... 26

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004) ......................................................................... 12

*Labiche v. Certain Ins. Cos. or Underwriters at Lloyd's, London,
  England*,
  196 F. Supp. 102 (E.D. La. 1961) .................................................... 17

*Leavitt v. Jane L.*,
 518 U.S. 137 (1996) (per curiam) ........................................................................ 26

*Margaret S. v. Edwards*,
 488 F. Supp. 181 (E.D. La. 1980) ........................................................................ 18

*Maryland v. King*,
 133 S. Ct. 1 (2012) ............................................................................................... 25

*Monk v. Huston*,
 340 F.3d 279 (5th Cir. 2003) ............................................................................... 11

*Nat'l Football League Players Ass'n v. Nat'l Football League*,
 874 F.3d 222 (5th Cir. 2017) (per curiam) .......................................................... 10

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
 833 F.2d 583 (5th Cir. 1987) ............................................................................... 11

*PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*,
 418 F.3d 535 (5th Cir. 2005) ............................................................................. 9-10

*Planned Parenthood Ass'n of Kansas City, Mo., Inc. v. Ashcroft*,
 462 U.S. 476 (1983) ............................................................................................. 21

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
 734 F.3d 406 (5th Cir. 2013) ............................................................................... 25

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
 748 F.3d 583 (5th Cir. 2014) ............................................................................... 12

*Planned Parenthood of Hous. & Se. Tex. v. Sanchez*,
 403 F.3d 324 (5th Cir. 2005) ................................................................................. 9

*Planned Parenthood of Ind. & Ky., Inc. v. Comm'r*,
 194 F. Supp. 3d 818 (S.D. Ind. 2016), appeal pending from final
 judgment, No. 17-3163 (7th Cir. Sept. 22, 2017) ................................................. 18

*Planned Parenthood of Se. Pa. v. Casey*,
 505 U.S. 833 (1992) ........................................................... 1, 14, 15, 16, 19, 20, 21

*Roark & Hardee LP v. City of Austin*,
 522 F.3d 533 (5th Cir. 2008) ............................................................................... 23

*Roe v. Wade*,
 410 U.S. 113 (1973) ............................................................................................. 18

*Shields v. Norton*,
 289 F.3d 832 (5th Cir. 2002) ............................................................................... 11

*Tex. Med. Providers Performing Abortion Servs. v. Lakey*,
 667 F.3d 570 (5th Cir. 2012) ............................................................................... 20

*Thomas v. Union Carbide Agric. Prods. Co.*,
 473 U.S. 568 (1985) ............................................................................................. 11

*United States v. Vuitch,*
   402 U.S. 62 (1971) ................................................................................ 22

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
   455 U.S. 489 (1982) .............................................................................. 23

*Webster v. Reprod. Health Servs.,*
   492 U.S. 490 (1989) .............................................................................. 19

*White v. Murtha,*
   377 F.2d 428 (5th Cir. 1967) ............................................................... 10

*Whole Woman's Health v. Hellerstedt,*
   136 S. Ct. 2292 (2016) .................................................................... 6, 15

*Whole Woman's Health v. Hellerstedt,*
   231 F. Supp. 3d 218 (W.D. Tex. 2017) ............................................ 5, 6

## Constitutional Provisions, Statutes and Rules

Tex. Civ. Prac. & Rem. Code § 71.001(4) ....................................................... 2

Tex. Est. Code § 1002.002 ................................................................................ 2

Tex. Gov't Code § 312.013 .............................................................................. 26

Tex. Health & Safety Code

   § 241.010 ................................................................................................ 2
   Ch. 697 ........................................................................................... *passim*
   § 697.001 ........................................................................................ 7, 14
   § 697.003 ........................................................................................ 7, 23
   § 697.004 ................................................................................. 19-20, 23
   § 697.004(a) ......................................................................................... 7
   § 697.004(b) .................................................................................... 7, 24
   § 697.004(b)(2) .................................................................................... 8
   § 697.004(d) ......................................................................................... 7
   § 697.005 ............................................................................................ 26
   § 697.005(1) ......................................................................................... 8
   § 697.005(2) ......................................................................................... 8
   § 697.006 ...................................................................................... 8, 26
   §§ 716.302-.304 ............................................................................ 7, 24

Tex. Penal Code § 1.07(a)(26) .......................................................................... 2

Fed. R. Civ. P. 54(b) ....................................................................................... 10

25 Tex. Admin. Code

    §§ 1.131-.137 ............................................................................................. 1

    § 1.132(33) ........................................................................................... 2-3

    § 1.136(a)(4)(A)(v) ............................................................................... 2

    § 1.136(a)(4)(B)(i) ................................................................................ 2

## Other Authorities

41 Tex. Reg. 9667 (2016) ........................................................................ 2, 3

Act of May 30, 2015, 84th Leg., R.S., ch. 837,
    2015 Tex. Gen. Laws 2489 ............................................................... 8

Tex. S.B. 8, 85th Leg., R.S. (2017) .......................................... 6, 7, 13, 26

The United States Supreme Court has repeatedly stated that States may express their respect for unborn life. *Gonzales v. Carhart*, 550 U.S. 124, 146 (2007); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 877 (1992) (plurality op.). The Texas Legislature did just that when it barred health care facilities from disposing of embryonic and fetal remains in landfills and sewers. Instead, those remains are to be given the dignity of being interred or scattered as ashes. Plaintiffs, however, assert—without proper standing—that mandating the respectful treatment of fetal remains violates their patients' constitutional right to freedom of belief. But regulating the disposition of fetal tissue does not impact a woman's freedom of belief. Nor does it create a substantial obstacle to abortion access, especially because Plaintiffs have found a vendor that can comply with Texas's new law at low cost. Moreover, Plaintiffs have not identified any language in Texas's new law that is unconstitutionally vague. The Court should deny Plaintiffs' request for a temporary restraining order or preliminary injunction.

## STATEMENT OF FACTS

### I.   Prior Methods of Disposition of Fetal Tissue

Prior to the regulations and legislation giving rise to this lawsuit, the disposition of fetal tissue was governed by the rules concerning special waste from health care-related facilities. 25 Tex. Admin. Code §§ 1.131-.137. Those rules treated fetal tissue as pathological waste and required health care-related facilities to dispose of it by

(I) grinding and discharging to a sanitary sewer system;

(II) incineration followed by deposition of the residue in a sanitary landfill;

1

(III) steam disinfection followed by interment;

(IV) interment;

(V) moist heat disinfection followed by deposition in a sanitary landfill;

(VI) chlorine disinfection/maceration followed by deposition in a sanitary landfill; or

(VII) an approved alternate treatment process, provided that the process renders the item as unrecognizable, followed by deposition in a sanitary landfill.

Orig. Compl. Ex. B (Doc. 1-2) (former 25 Tex. Admin. Code § 1.136(a)(4)(B)(i)).

In 2016, the Department of State Health Services (the Department) undertook to review the rules and "considered and gave great weight to the Legislature's policy objective of ensuring dignity for the unborn" which the Department found in multiple statutes. 41 Tex. Reg. 9667, 9709 (2016).[1] Consequently, the Department adopted amendments to the rules (the Amendments) limiting the disposition of fetal tissue to

(I)   interment;

(II)  incineration followed by interment; or

(III) steam disinfection followed by interment.

25 Tex. Admin. Code § 1.136(a)(4)(A)(v). "Interment" includes cremation, entombment, burial, or placement in a niche, and the scattering of ashes. 25 Tex. Admin.

---

[1] Tex. Penal Code § 1.07(a)(26) (defining "Individual" to include "an unborn child at every stage of gestation"); Tex. Civ. Prac. & Rem. Code § 71.001(4) defining "Individual" in the wrongful death statute to include "an unborn child at every stage of gestation"); Tex. Est. Code § 1002.002 (permitting appointment of attorney ad litem for an unborn person in guardianship proceedings); Tex. Health & Safety Code § 241.010 (requiring hospitals to release to a parent remains of an unborn child who dies as a result of an unintended, intrauterine death).

Code § 1.132(33). As before, the Amendments allow fetal tissue from different pregnancies to be commingled for purposes of disposition. 1/3/17 Transcript at 148 (Doc. 68). As a result of the Amendments, fetal tissue could no longer be ground and discharged into a sanitary sewer system, nor could the ashes of fetal tissue be deposited into a sanitary landfill. The Amendments were to take effect on December 18, 2016. 41 Tex. Reg. 9741.

## II.  Plaintiffs' Original Complaint and Preliminary Injunction

Plaintiffs are licensed health care facilities and physicians that provide abortions or other gynecological services. First Am. Compl. ¶¶ 12-17 (Doc. 93). Their Original Complaint alleged that the Amendments were unconstitutionally vague, violated the rights of liberty, privacy, and equal protection, and also violated the Commerce Clause. Orig. Compl. ¶¶ 91-100 (Doc. 1). Plaintiffs, however, admitted that they are aware of a facility in Texas that is "willing and able to provide cremation services for embryonic and fetal tissue from abortion clinics at a cost that is not an order of magnitude larger than their current special waste disposal costs." Orig. Compl. ¶ 71. Nevertheless, Plaintiffs obtained a temporary restraining order prohibiting the Amendments from going into effect. 12/15/16 Order (Doc. 24).

The Court then held a two-day hearing on Plaintiffs' request for a preliminary injunction, which sought relief only on the liberty and vagueness claims.[2] Amy Hagstrom Miller, President of Plaintiff Whole Woman's Health, and Plaintiff Dr. Lendol

---

[2] The parties resolved the privacy claim, and it has been dismissed. 1/4/17 Stipulation (Doc. 39).

Davis, owner and director of Plaintiffs Brookside Women's Medical Center and Austin Women's Health Center, testified that their current practices were to store fetal tissue in a freezer until it was picked up for incineration and deposition into a landfill, which occurred twice a month. 1/3/17 Transcript at 8, 15, 43, 50, 59-60.

Regarding costs, Plaintiffs' expert, Dr. Anne Layne-Farrar confirmed that she had located a vendor in the Dallas area who could provide cremation services in compliance with the Amendments at low cost—anywhere from 52 cents to $1.56 per patient. 1/3/17 Transcript at 129-30. Plaintiffs put on no evidence of their current disposition costs and, when pressed, Hagstrom Miller was unable even to estimate what her current disposition costs were. 1/3/17 Transcript at 22-23. And neither Hagstrom Miller nor Dr. Davis were aware that the vendor identified by their own expert could provide disposition services for less than $2 a patient. 1/3/17 Transcript at 34, 71. In fact, Plaintiffs' counsel admitted that "Plaintiffs are not making an argument about cost as far as abortion clinics go." 12/15/16 Transcript at 29 (Doc. 52).

Defendant presented the testimony of Jennifer Carr Allmon, Executive Director of the Texas Conference of Catholic Bishops (TCCB), who explained that the TCCB intended to offer free common burial for any fetal remains. 1/4/17 Transcript at 79, 83 (Doc. 69). Defendant also called Jay Carnes, owner of several funeral homes and a crematory in the Houston area, who testified that he was in the process of contracting with multiple health care providers in Houston to provide disposition services for fetal remains. 1/4/17 Transcript at 124-25, 131. In addition, Dr. Layne-Farrar believed that there were likely additional crematories in Texas that would cremate fetal tis-

sue. 1/3/17 Transcript at 123. Despite knowing the Amendments would soon take effect, Hagstrom Miller did not contact any hospitals to determine how they dispose of fetal tissue (although Hagstrom Miller knew that some use burial or cremation), nor did she contact any crematoriums to determine whether they could provide the necessary services. 1/3/17 Transcript at 27-30.

On the subject of women's preferences regarding the disposition of fetal tissue, Hagstrom Miller stated that "[w]omen rarely bring up the disposal of the tissue of their embryo or fetus." Hagstrom Miller Decl. ¶ 16 (Doc. 6-1). Rather, "women's main concern is always to have a safe abortion." Hagstrom Miller Decl. ¶ 16. Dr. Davis likewise testified that "[m]ost patients never even ask how the tissue removed from their bodies is disposed of." Davis Decl. ¶ 23 (Doc. 6-2). Dr. Karen Swenson, who also testified for Plaintiffs, stated that she has never had a patient ask where the fetal or embryonic tissue will be disposed. 1/4/17 Transcript at 21. Nevertheless, Hagstrom Miller and Dr. Davis both speculated that their patients would be opposed to "funerals," "funeral practices," "funeral services," and "funeral rituals" for their fetal tissue, Hagstrom Miller Decl. ¶ 17; Davis Decl. ¶¶ 21-22, although no funeral, practice, or ritual was required by the Amendments. And Hagstrom Miller and Dr. Davis both admitted that some of their patients wanted a funeral for their fetus. Hagstrom Miller Decl. ¶ 16; Davis Decl. ¶¶ 23-24.

The Court preliminarily enjoined the Amendments in their entirety. *Whole Woman's Health v. Hellerstedt* (*WWH II*), 231 F. Supp. 3d 218 (W.D. Tex. 2017). Regarding vagueness, the Court sua sponte held that the catch-all phrase "other tissue from a pregnancy," found in the definition of "fetal tissue," was unconstitutionally

vague, *id.* at 226, despite the fact that (1) Plaintiffs had not challenged that phrase, and (2) Dr. Davis defined the term for the Court. 1/3/17 Transcript at 89-90. The Court also held that the Amendments were vague because they did not, in the Court's opinion, actually prohibit disposition of ashes in a landfill, despite the Department's position to the contrary. *WWH II*, 231 F. Supp. 3d at 226-27.

Concerning the liberty claim, the court determined that the Amendments' benefits did not outweigh their burdens. *Id.* at 228 (citing *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2309 (2016)). The Court found that the Amendments did not further a legitimate state interest because they (1) "inferentially establish[ed] the beginning of human life as conception," (2) did not show respect for life because no potential life remains in a fetus that has been aborted or miscarried, and (3) did not show sufficient respect for fetal remains by continuing to permit freezing and commingling of remains. *Id.* at 229-30. With respect to burdens, the Court hypothesized that the single vendor identified by Plaintiffs might not be able to meet the disposition needs of the entire state. *Id.* at 231. The Court rejected the testimony of Allmon and Carnes because they did not have the necessary permits from the Texas Commission on Environmental Quality (TCEQ) to transport or handle pathological waste. *Id.* Defendant appealed.

## III. Senate Bill 8 and Chapter 697 of the Texas Health & Safety Code

During the pendency of the appeal, the Texas Legislature enacted Senate Bill 8, which contained numerous provisions reflecting the State's respect for unborn life. Tex. S.B. 8, 85th Leg., R.S. (2017). Relevant here, Senate Bill 8 created Chapter 697 of the Texas Health and Safety Code to govern the disposition of fetal tissue. *Id.* § 13.

The purpose of Chapter 697 is to "express the state's profound respect for the life of the unborn by providing for a dignified disposition of embryonic and fetal tissue remains." Tex. Health & Safety Code § 697.001. Chapter 697 removes embryonic and fetal tissue from the definition of "pathological waste," *id.* § 697.003, and provides that health care facilities must dispose of such tissue by

    (1)  interment;

    (2)  cremation;

    (3)  incineration followed by interment; or

    (4)  steam disinfection followed by interment.

*Id.* § 697.004(a). The ashes resulting from cremation or incineration may be "interred or scattered in any manner as authorized by law for human remains" and "may not be placed in a landfill." *Id.* § 697.004(b). Currently, the ashes of human remains may be scattered over uninhabited public land, over a public waterway or sea, or on the private property of a consenting owner. *Id.* §§ 716.302-.304. Health care facilities must begin complying with Chapter 697's disposition provisions on February 1, 2018. Tex. S.B. 8, 85th Leg., R.S., § 19(d) (2017).

Chapter 697 includes several provisions relevant to Plaintiffs' constitutional challenges. First, because Chapter 697 removes embryonic and fetal tissue from the definition of pathological waste and also permits the associated umbilical cord, placenta, gestational sac, blood, and body fluids to be disposed of in the same manner as the embryonic and fetal tissue, Tex. Health & Safety Code §§ 697.003, .004(d), Chapter 697 opens the door to many more disposition vendors. No longer will entities have to obtain pathological-waste permits from the TCEQ before disposing of fetal tissue.

7

Second, Chapter 697 requires the Department to create a registry of (1) funeral homes and cemeteries willing to provide free common burial or low-cost private burial for fetal remains, and (2) private nonprofit organizations that wish to provide financial assistance. *Id.* § 697.005(1). The registry will be made available to any physician, health care facility, or their agent upon request. *Id.* § 697.005(2). Relatedly, the Department is also required to "develop a grant program that uses private donations to provide financial assistance for the costs associated with disposing of embryonic and fetal tissue remains." *Id.* § 697.006.

Finally, the purportedly vague language identified by the Court is no longer present in the statute. The phrase "other tissue from pregnancy" is not used, and the statute is explicit that the ashes of fetal tissue may not be placed in a landfill. *Id.* § 697.004(b)(2).

The Health and Human Services Commission (HHSC) adopted rules implementing Chapter 697.[3] *See* Ex. A. Those rules will be published in the January 26 edition of the Texas Register and will become effective on February 1. The rules confirm that individuals or entities that may store, handle, or transport fetal tissue include the health care facility that generated the fetal tissue and individuals or entities licensed, permitted, or otherwise authorized to store, transport, or handle (1) human remains by the Funeral Services Commission or, (2) special waste by the TCEQ. Ex. A at 19.

---

[3] Several of the Department's duties are being transferred to HHSC. *See* Act of May 30, 2015, 84th Leg., R.S., ch. 837, 2015 Tex. Gen. Laws 2489.

HHSC is also accepting and has received applications for the registry of entities willing to provide free or low-cost burials or financial assistance. *See* https://hhs.texas.gov/doing-business-hhs/provider-portals/health-care-facilities-regulation/burial-or-cremation-assistance-registry. The grant program is not yet online.

## IV.  Plaintiffs' First Amended Complaint

When it became clear that the Fifth Circuit might not reach a decision on Defendant's appeal before the February 1, 2018, effective date of Chapter 697, Defendant voluntarily dismissed its appeal and the case was remanded. Plaintiffs then filed an amended complaint bringing the same claims, other than privacy, First Am. Compl. ¶¶ 105-12, and have again sought a preliminary injunction on the liberty and vagueness claims. Second PI Mot. (Doc. 96). Plaintiffs did not, however, update their evidence to account for any of the differences between the previous Amendments and Chapter 697 with its implementing regulations.

## ARGUMENT

To obtain a temporary restraining order or preliminary injunctive relief, Plaintiffs must show (1) a substantial likelihood that they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury outweighs the threatened harm to the party whom they seek to enjoin, and (4) that granting the relief will not disserve the public interest. *See Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005). The Court should not grant injunctive relief "unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *PCI Transp.*

*Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (internal quotation marks omitted). Because Plaintiffs have not met their burden of showing that they are entitled to the extraordinary relief they seek, the Court should deny their request for injunctive relief.

Contrary to Plaintiffs' contention, the law-of-the-case doctrine does not apply. Second PI Mot. 9. First, the Federal Rules of Civil Procedure provide that a district court may revise "any order or other decision" at any time prior to the entry of final judgment. Fed. R. Civ. P. 54(b). Second, as explained in this brief, Chapter 697 is significantly different than the Amendments that were the subject of the Court's original injunction and, therefore, the application of the facts to the law will be different. *See White v. Murtha*, 377 F.2d 428, 431-32 (5th Cir. 1967) (allowing reexamination of issues when evidence is substantially different or controlling authority has changed). And third, to the extent the issues are the same, a court that receives a case that has been transferred is not prohibited from revising the prior court's decision when that decision is wrong. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). The Court should review all of the legal and factual arguments de novo.

## I.   The Court Lacks Jurisdiction Over Several of Plaintiffs' Claims.

A court cannot grant a preliminary injunction if it lacks jurisdiction over the case. *See Nat'l Football League Players Ass'n v. Nat'l Football League*, 874 F.3d 222, 225 (5th Cir. 2017) (per curiam). As described below, Plaintiffs have failed to establish jurisdiction over several of their claims. The Court should not, therefore, grant Plaintiffs injunctive relief.

### A.   Plaintiffs' claim regarding abortion access is not ripe.

Plaintiffs' argument regarding access to abortion is not ripe, as it depends on hypothetical future events that may never occur. A court lacks jurisdiction to decide disputes that are not ripe. *See Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). Instead, "[a] court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003). If the purported injury is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," the claim is not ripe for adjudication. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (quotation marks omitted).

Here, Plaintiffs have found a vendor that can comply with the new laws at minimal cost. First Am. Compl. ¶ 95.[4] To press their constitutional claims, Plaintiffs assert a number of possible future events that they believe could impact their ability to comply with the new laws: maybe the vendor will become a monopoly and raise prices, First Am. Compl. ¶ 97; maybe pro-life groups will pressure the vendor to quit doing business with Plaintiffs, First Am. Compl. ¶ 98; or maybe State interference will cause the vendor to quit doing business with Plaintiffs, First Am. Compl. ¶ 99. There is no evidence that any of these actions are imminent, and it is possible that they will never occur. Plaintiffs may properly bring those challenges only if, and when, Plaintiffs are unconstitutionally impacted. *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987).

---

[4] Plaintiffs now claim they are uncertain if the vendor can legally dispose of fetal tissue, First Am. Compl. ¶ 95, but Chapter 697 and the associated rules make clear that it can.

**B.   Plaintiffs lack standing to assert the beliefs of their patients.**

Plaintiffs' primary argument in this case is that Chapter 697 violates women's freedom of belief. Second PI Mot. 14-17. Courts have recognized that abortion providers have standing to assert their patients' claims regarding abortion access. *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 589 (5th Cir. 2014). But Plaintiffs request a novel extension of the doctrine to allow medical providers to assert their patients' core personal and individual beliefs, something that they are facially unqualified to do. Third-party standing requires a close relation between the plaintiffs and the rights of the third-parties that they are asserting. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). If their interests are not aligned, the Court should deny third-party standing. *See Canfield Aviation, Inc. v. Nat'l Transp. Safety Bd.*, 854 F.2d 745, 748 (5th Cir. 1988).

Plaintiffs have not submitted evidence that their pregnant patients—those seeking abortions, those with ectopic pregnancies, and those in need of miscarriage management services—uniformly prefer their fetal tissue to be disposed of in a sewer or landfill. Rather, Hagstrom Miller and Dr. Davis affirmatively testified that their patients almost never ask about the disposition of fetal tissue. Hagstrom Miller Decl. ¶ 16; Davis Decl. ¶ 23. And Hagstrom Miller and Dr. Davis's speculation about what their patients might believe is based on the incorrect assumption that the new laws require funeral services or rituals. Hagstrom Miller Decl. ¶ 17; Davis Decl. ¶¶ 21-22. Plaintiffs have no basis on which to claim knowledge of, much less advance, their patients' desires or beliefs.

Moreover, the few specific conversations that Hagstrom Miller and Dr. Davis recalled are with patients who *wanted* funerals for their fetuses and were deterred from those services because of the associated costs. Hagstrom Miller Decl. ¶ 16; Davis Decl. ¶¶ 23-24. But Plaintiffs are actively opposing the State's efforts to assist those patients. Plaintiffs have asked the Court to declare unconstitutional the registry and grant program, which would assist women with the costs of burials and cremations for their fetuses. Thus, although claiming to champion women's autonomy, Plaintiffs are seeking to prevent the State from helping women whose views do not align with those of Plaintiffs. Third-party standing cannot exist in such circumstances. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 17-18 (2004). The Court cannot assume that all women have the same belief about the disposition of fetal remains, and Plaintiffs should not be permitted to assert the "beliefs" of their patients in this lawsuit.

### C.  Plaintiffs' challenge to the Amendments will soon become moot.

Plaintiffs' challenge to the Amendments will become moot by operation of law on February 1, 2018, when Chapter 697 takes effect. Tex. S.B. 8, 85th Leg., R.S., § 19(d) (2017). Therefore, the rest of this brief will focus primarily on Chapter 697.

## II.  Plaintiffs Are Not Substantially Likely to Prevail on Any of Their Constitutional Claims.

As before, Plaintiffs assert two constitutional claims: "personal liberty" and vagueness. They are not likely to prevail on either of them for the reasons described below.

### A.  Plaintiffs will not prevail on their personal liberty claim.

Although Plaintiffs refer to a wide variety of rights, ranging from same-sex marriage to sodomy to saluting the flag, Second PI Mot. 9-10, in the end, the Court must apply the undue-burden test from *Casey*, 505 U.S. at 877 (plurality op.).[5] Under that standard, Plaintiffs must show that Chapter 697 and the Amendments create a substantial obstacle to a woman's right to a previability abortion.[6] *Id.* Plaintiffs have not met their burden.

### 1.  Plaintiffs must prove that the State has imposed a substantial obstacle to abortion access.

The purpose of Chapter 697 is to "express the state's profound respect for the life of the unborn . . . ." Tex. Health & Safety Code § 697.001. The specific constitutional test for such laws is the substantial-obstacle test set out in *Casey* and *Gonzales*: "'[R]egulations which do no more than create a structural mechanism by which the State . . . may express profound respect for the life of the unborn are permitted, if they are not a substantial obstacle to the woman's exercise of the right to choose.'" *Gonzales*, 550 U.S. at 146 (quoting *Casey*, 505 U.S. at 877).[7]

---

[5] All references to *Casey* are to the plurality opinion, unless otherwise noted.

[6] Defendant denies that miscarriage management procedures are subject to the undue-burden analysis. Second PI Mot. 10 n.6. The Supreme Court has never extended the right to a previability abortion to all pregnancy-related care. Regardless, inclusion of miscarriage management in the analysis does not change the result in this case.

[7] Plaintiffs do not make an argument that Chapter 697 was enacted with an improper purpose. Although Plaintiffs allude to the fact that the Amendments were published shortly after the *Whole Woman's Health* decision, First Am. Compl. ¶ 26, the undisputed testimony shows that the Amendments were submitted for publication a week before the decision and had been in the works for many months prior.

Plaintiffs, however, ask the Court to apply the benefit/burden balancing test that the *Whole Woman's Health* Court applied to health and safety regulations. 136 S. Ct. at 2309. But the balancing test from *Whole Woman's Health* should not be applied when the State's interest is in respecting fetal life, as opposed to health and safety.

The origin of the balancing analysis comes from the Supreme Court's statement in *Casey* that "[u]nnecessary health regulations that have the purpose or effect of presenting a substantial obstacle to a woman seeking an abortion impose an undue burden on the right." 505 U.S. at 878. The Court relied on the "unnecessary" language in *Whole Woman's Health* to conclude that the *Casey* test required balancing the benefits provided by health and safety laws with the burdens they imposed. 136 S. Ct. at 2299, 2309. But the Court has never applied the balancing analysis to laws designed to show the State's respect for fetal life; instead, it looks only for a substantial obstacle.

For example, when considering the 24-hour waiting period in *Casey*, a measure designed "to implement the State's interest in protecting the life of the unborn," the Court focused on whether the waiting period imposed a substantial obstacle to abortion access. *Id.* at 885-87 (discussing travel distances, finances, delay, and exposure to hostility). Similarly, in *Gonzales*, the partial-birth abortion ban at issue was an act that "expresse[d] respect for the dignity of human life." 550 U.S. at 157. The Court

_____

1/3/17 Transcript at 154. Moreover, Dr. Davis's testimony that the Department retaliated against him by issuing a "bogus" statement of deficiencies two days after the *Whole Woman's Health* decision was demonstrably wrong. *Compare* Davis Decl. ¶ 34 *with* Davis Decl. Ex. B (response dated June 28, 2016). Plaintiffs have never explained or corrected his testimony.

considered only whether the partial-birth abortion ban imposed a substantial obstacle to abortion access. *Id.* at 156-67. In finding the ban constitutional, the Court stated

> [w]hen it has a rational basis to act, and it does not impose an undue burden, the State may use its regulatory power to bar certain procedures and substitute others, all in furtherance of its legitimate interests in regulating the medical profession in order to promote respect for life, including life of the unborn.

*Id.* at 158.

Plaintiffs unsurprisingly have failed to offer an objective method to engage in a balancing test, but instead argue that their patients' beliefs must always trump state regulations respecting life. Given this inherent disagreement, the Court should not use the balancing test, but look only for a substantial obstacle.

But even if the Court were to use the balancing test, the analysis in this case will ultimately be the same. The Supreme Court has held that the State has a substantial interest in the life of the unborn, *Casey*, 505 U.S. at 876; therefore, a State's decision to respect unborn life, as others in death, is, by definition, a benefit, *id.* (stating that "[t]he very notion that the State has a substantial interest in potential life leads to the conclusion that not all regulations must be deemed unwarranted."). And that benefit can be outweighed only by a substantial obstacle to abortion access. *Gonzales*, 550 U.S. at 146; *Casey*, 505 U.S. at 877. Therefore, regardless of what test the Court uses, Plaintiffs must demonstrate that Chapter 697 poses a substantial obstacle to abortion access. They have not done so.

## 2.   Chapter 697 furthers the State's interest in respecting unborn life.

Plaintiffs assert that keeping fetal remains out of landfills and sewers does not actually further respect for unborn life. Second PI Mot. 13-14. But "[r]espect for the body of the dead is part of our culture . . . ." *Labiche v. Certain Ins. Cos. or Underwriters at Lloyd's, London, England*, 196 F. Supp. 102, 104-05 (E.D. La. 1961). Burial or cremation (followed by the scattering of ashes) is far different than placing the ashes in a landfill or grinding the remains and discharging them into the sewer system. Moreover, embryonic and fetal tissue is not like other tissue from the human body. At six weeks' gestation, an embryo has brain activity, a heartbeat, fingers, and toes. Def. PI Ex. D-4 (Doc. 45-1). At eight weeks' gestation, all essential organs have begun to form as well as most facial features. Def. PI Ex. D-4.[8] The same cannot be said of any other organ or tissue that may be removed from an individual. *See Harris v. McRae*, 448 U.S. 297, 325 (1980) ("Abortion is inherently different from other medical procedures, because no other procedure involves the purposeful termination of a potential life."). It is respectful to treat embryonic and fetal remains with greater dignity than garbage in a landfill.

Plaintiffs wrongly attempt to minimize the State's interest in respecting unborn life by arguing that there is no potential life left to respect after an abortion or miscarriage. Second PI Mot. 13-14 (citing, inter alia, *Hopkins v. Jegley*, No. 4:17-00404-KGB, 2017 WL 3220445, at *63 (E.D. Ark. July 28, 2017), appeal pending, No. 17-

---

[8] Most abortions in Texas occur by eight weeks' post-fertilization (which is ten weeks' gestation). Def. PI Ex. D-2 (Doc. 45-1).

2879 (8th Cir. Aug. 28, 2017)). If that were true, though, the partial-birth abortion ban in *Gonzales* could not have withstood constitutional scrutiny, as it did not prevent the death of the unborn, but only changed the manner of death. 550 U.S. at 132.

Other district courts cited by Plaintiffs erroneously held that showing respect to fetal life is tantamount to making a fetus a "person" under the Fourteenth Amendment in violation of *Roe v. Wade*, 410 U.S. 113 (1973). Second PI Mot. 13-14 (citing *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r*, 194 F. Supp. 3d 818, 834 (S.D. Ind. 2016), appeal pending from final judgment, No. 17-3163 (7th Cir. Sept. 22, 2017); *Margaret S. v. Edwards*, 488 F. Supp. 181, 222 (E.D. La. 1980)). But that reasoning is directly contradicted by *Casey*'s and *Gonzales*'s holdings. Elevating fetal remains above garbage in a landfill or sewer causes no damage to *Roe*'s original holding. Chapter 697 advances Texas's unquestionably legitimate interest in respecting fetal life.

### 3.   Chapter 697 does not create an undue burden.

Plaintiffs assert that Chapter 697 creates an undue burden in three ways: (a) violating a woman's beliefs; (b) harming the health and safety of women; and (c) denying access to abortion. Second PI Mot. 14-19. None pose a substantial obstacle.

**a.**   Pulling together statements about the mystery of life and personal autonomy, Plaintiffs assert that showing respect for fetal life violates women's freedom of belief. Second PI Mot. 14-17. But Chapter 697 does not impact a woman's belief—she remains free to believe whatever she wishes about her fetus. Instead, Plaintiffs are asking the Court to create a new constitutional right that allows a woman to dictate that a health care facility place her fetal remains in a landfill or sewer regardless of

state law. But the right recognized in *Roe* and *Casey* extends only to the right to obtain a previability abortion, for it is only when a state regulation imposes an undue burden on a woman's ability to "make th[e] decision [to obtain an abortion] does the power of the State reach into the heart of the liberty protected by the Due Process Clause." *Casey*, 505 U.S. at 874; *id.* at 877 ("What is at stake is the woman's right to make the ultimate decision . . . .").

The Supreme Court permits States to take actions respecting unborn life, even if others disagree. "[T]he Constitution does not forbid a State or city, pursuant to democratic processes, from expressing a preference for normal childbirth." *Webster v. Reprod. Health Servs.*, 492 U.S. 490, 511 (1989) (internal citation and quotation marks omitted). Moreover, the State may "enact rules and regulations designed to encourage [the patient] to know that there are philosophic and social arguments of great weight that can be brought to bear in favor of continuing the pregnancy to full term . . . ." *Casey*, 505 U.S. at 872. Further, the "government may use its voice and its regulatory authority to show its profound respect for the life within the woman." 550 U.S. at 157. If a State may, in accordance with the Constitution, show its respect for fetal life by encouraging a woman to give birth, the State can surely require health care facilities to dispose of fetal tissue with respect, which has no impact upon the abortion itself.

Chapter 697's requirements pose no tangible burden. Plaintiffs' current practices involve reducing fetal tissue to ash through incineration and placing the ashes in a landfill. 1/3/17 Transcript at 15, 59-60. Under Chapter 697, Plaintiffs may still reduce fetal tissue to ash through incineration or cremation, but the ashes must be interred or scattered where permitted by law, but not in a landfill. Tex. Health & Safety Code

§ 697.004. Plaintiffs have not identified any widespread preference that the ashes of fetal tissue be placed in a landfill, as opposed to scattered in a field, in a park, or at sea. Likewise, to the extent a religious practice requires ashes or remains to be placed in a landfill or sewer, such a claim would arise under the First Amendment in an as-applied challenge. *See Gonzales*, 550 U.S. at 168 (stating that "[a]s-applied challenges are the basic building blocks of constitutional adjudication" (internal quotation marks omitted)).

Plaintiffs may oppose the idea that fetal tissue should be given any respect higher than garbage in a landfill, but the Supreme Court has repeatedly stated that the State may reach the opposite conclusion—that fetal life is worthy of respect. Plaintiffs' arguments on this point are nothing short of a desire to overturn decades of Supreme Court precedent that expressly allow the State to demonstrate its respect for fetal life.

**b.**   Plaintiffs next assert that Chapter 697 will harm the health and safety of their patients, speculating that some women may choose to forego or delay medical treatment rather than allow their fetal tissue to be buried or cremated. Second PI Mot. 17. But a woman's disagreement with an abortion procedure or regulation is not a substantial obstacle to abortion access. To hold otherwise would call into question multiple settled precedents regarding abortion laws with which women may disagree. *See, e.g.*, *Casey*, 505 U.S. at 885-87 (upholding 24-hour waiting period prior to abortion); *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 580 (5th Cir. 2012) (requiring sonogram prior to abortion).

Moreover, there is no constitutional right to remain unaware that many individuals consider the fetus to be life. As *Casey* stated, "it is an overstatement to describe it as a right to decide whether to have an abortion without interference from the State." 505 U.S. at 875 (internal quotation marks omitted); *see also id.* at 877 (stating that there is no "right to be insulated from all others" when deciding whether to obtain an abortion). Individuals may disagree with the State's decision to treat fetal tissue with respect, but that decision does not impose any burden on the right to choose an abortion in the first place.

    **c.**    Plaintiffs have found a facility in the State that is "willing and able to provide cremation services for embryonic and fetal tissue from abortion clinics" at a reasonable cost. First Am. Compl. ¶ 95. There is, therefore, no need to issue any injunction. Dr. Layne-Farrar testified that the costs from this vendor would be less than $2 per patient. 1/3/17 Transcript at 129-30. The Supreme Court previously upheld a law requiring a pathology report on each aborted fetus, even though it would increase the cost of abortion by $19.40. *Planned Parenthood Ass'n of Kansas City, Mo., Inc. v. Ashcroft*, 462 U.S. 476, 490 (1983). The minimal increase here is not an undue burden.

    In an effort to inflate the purported cost, Plaintiffs cite the costs of individual cremations or burials. Second PI Mot. 18 (referring to legislative materials and testimony of Drs. Layne-Farrer and Davis). But Chapter 697 does not require individual burials or cremations. Fetal remains may be cremated together or buried in a common grave. Thus, the costs of individual burials and cremations are not helpful to the Court's analysis.

Regarding the availability of services, Plaintiffs' failure to update their evidence to account for the changes brought by Chapter 697 is fatal to their claim. Because the requirement of TCEQ permitting for pathological waste has been eliminated by Chapter 697, the evidence now reflects that there is more than one entity in the State willing and able to provide disposition services in compliance with Chapter 697. As a licensed funeral director, Carnes may store, handle, and transport fetal tissue, and the TCCB may also work with other licensed funeral directors to provide burials. Plaintiffs may even transport the fetal tissue themselves. All of Plaintiffs' worst-case scenarios are based on their claim that there is only one vendor in the State that can comply with the law. Because Chapter 697 opened the door to multiple new vendors, Plaintiffs' evidence falls far short of meeting their burden of proof.

Because Plaintiffs have not shown a substantial obstacle to abortion access, or that the alleged burdens imposed by Chapter 697 outweigh the benefit in respecting unborn life, they have not proven a likelihood of success on this issue and their request for an injunction should be denied.

### B.   Plaintiffs' vagueness claims are meritless.

Although bringing a vagueness challenge, Plaintiffs do not identify any specific words, phrases, or other language in Chapter 697 that are allegedly incomprehensible. It is a fundamental principle of constitutional law that statutes or rules be construed to uphold their constitutionality. *See, e.g.*, *Frisby v. Schultz*, 487 U.S. 474, 483 (1988); *United States v. Vuitch*, 402 U.S. 62, 70 (1971). Statutes are not unconstitutionally vague when they establish "an imprecise but comprehensible normative

standard," but only when "no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971).

A pre-enforcement, facial vagueness challenge is particularly "difficult, perhaps impossible, because facts are generally scarce." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 547 (5th Cir. 2008). As an initial matter, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). Plaintiffs' entire lawsuit is premised on the fact that Chapter 697 proscribes their conduct, and they do not deny that there are other undisputedly clear ways for them to comply with the law.

1.    Plaintiffs assert that they are uncertain whether funeral homes may handle embryonic and fetal tissue because pre-existing administrative rules refer to cremating "human remains" and handling "pathological waste." Second PI Mot. 21-22. But Chapter 697 is clear: embryonic and fetal tissue remains are not pathological waste and may be cremated. Tex. Health & Safety Code §§ 697.003, .004. Any administrative rule that contravenes specific statutory language is invalid, *Harlingen Family Dentistry v. Tex. Health & Human Servs. Comm'n*, 452 S.W.3d 479, 481 (Tex. App.— Austin 2014, pet. dism'd); and invalid rules may not be enforced against a funeral home acting in compliance with Chapter 697.

Plaintiffs next assert that the proposed rules are unconstitutionally vague with respect to the disposition of the ashes that result from cremation or incineration. Second PI Mot. 22-23. But Plaintiffs do not base this complaint on vague language in Chapter 697, but rather on a series of statements (taken out of context) regarding the

Amendments. Defendant disagrees with Plaintiffs' portrayal of his position regarding scattering ashes under the Amendments, but there can be no question that Chapter 697 is clear. Ashes of embryonic and fetal tissue may be scattered anywhere permitted for human remains, but not in a landfill. Tex. Health & Safety Code § 697.004(b). The law governing ashes of human remains permits scattering in uninhabited public land, over a public waterway or sea, or on the private property of a consenting owner. *Id.* §§ 716.302-.304. Plaintiffs offer no principled reason why this is unclear.

2.    Plaintiffs also complain that the relevant rules for Chapter 697 were not proposed or adopted in accordance with the Legislature's timing. Second PI Mot. 23-24. This is not a vagueness challenge. If Plaintiffs are ill-prepared to comply with Chapter 697 on February 1, it is a reflection only of their own inaction, which is not a reason to enjoin the law. Plaintiffs have known since June 2017 that Chapter 697 would become effective on February 1, 2018. They have also known for over a year of a vendor in Dallas that would enable them to comply with the Amendments (and, now, Chapter 697). Plaintiffs made the choice to take no action to prepare to comply with Chapter 697. They should not be rewarded with an injunction as a result.

## III. Plaintiffs Have Not Proven That the Remaining Factors Favor an Injunction.

Plaintiffs assert that, once a constitutional violation is established, any resulting harm is irreparable. Second PI Mot. 24-25. But they have not identified any individual or group of individuals who will be deprived of the constitutional right to a pre-viability abortion in Texas. And Plaintiffs' vagueness claims do not demonstrate irreparable harm, as Plaintiffs can comply with the undisputedly clear portions of

Chapter 697 concerning interment. Absent any harm, much less irreparable harm, the balance of equities favors the State. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."); *see also Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers).

Because the Supreme Court has held that the State has a legitimate interest in expressing its respect for the life of the unborn, granting relief to Plaintiffs will not serve the public interest. Because there is no constitutional violation, the State should be permitted, consistent with Supreme Court precedent, to show its respect for unborn life by providing for the dignified treatment of fetal tissue.

## IV. If the Court Concludes That Injunctive Relief Is Necessary, It Should Sever the Portions of the Law It Finds Likely To Be Unconstitutional.

The Court should not enjoin the entirety of Chapter 697 because (1) Plaintiffs have not proven that all of the provisions in Chapter 697 are unconstitutional, and (2) Senate Bill 8 contains a severability clause. "'[T]he scope of injunctive relief is dictated by the extent of the violation established'" by plaintiffs. *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Moreover, courts should "enjoin only the unconstitutional applications of a statute while leaving other applications in force, or to sever its problematic portions while leaving the remainder intact." *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328-29 (2006) (citation omitted).

25

Plaintiffs have not established that the entirety of Chapter 697 is unconstitutional. They have made no arguments whatsoever concerning (1) the registry of entities willing to provide financial assistance or free or low-cost burials and cremations for fetal remains, Tex. Health & Safety Code § 697.005; or (2) the grant program to assist with the burial and cremation of fetal remains, *id.* § 697.006. The existence of the registry and grant program places no burdens or obligations on Plaintiffs or their patients. At a bare minimum, then, any injunction should not include those statutes.

Similarly, Plaintiffs have challenged as unconstitutionally vague only the portions of Chapter 697 related to cremation and scattering of ashes. The Court should preserve the undisputedly clear portions of Chapter 697. *See, e.g.*, *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) (enjoining only the vague clause).

Finally, federal courts must follow state severability clauses. *See Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996) (per curiam) ("Severability is of course a matter of state law."). And Senate Bill 8 has a robust severability clause. Tex. S.B. 8, 85th Leg., R.S., §§ 20-21 (2017); *cf.* Tex. Gov't Code § 312.013 (declaring default rule of severability for statutes). Thus, to the extent the Court concludes that injunctive relief is appropriate, it should sever the purportedly unconstitutional portions of the law and allow the rest to take effect.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' request for a preliminary injunction or, in the alternative, a temporary restraining order.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

*/s/ Darren McCarty*
DARREN MCCARTY
Special Counsel for Civil Litigation
Texas Bar No. 24007631

AUSTIN R. NIMOCKS
Special Counsel for Civil Litigation

BETH KLUSMANN
Assistant Solicitor General

KARA HOLSINGER
Assistant Attorney General
Administrative Law Division

BENJAMIN S. WALTON
Assistant Attorney General
General Litigation Division

OFFICE OF THE ATTORNEY GENERAL
Administrative Law Division (MC 018)
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4300
Facsimile: (512) 320-0167
Darren.McCarty@oag.texas.gov
Austin.Nimocks@oag.texas.gov
Beth.Klusmann@oag.texas.gov
Kara.Holsinger@oag.texas.gov
Benjamin.Walton@oag.texas.gov

*Attorneys for Defendant*

# CERTIFICATE OF FILING AND SERVICE

I certify that on January 17, 2018, this document was served on the following counsel of record through the Court's CM/ECF Document Filing System or through e-mail:

Patrick J. O'Connell
LAW OFFICES OF PATRICK J.
 O'CONNELL PLLC
2525 Wallingwood, Bldg. 14
Austin, Texas 78746
pat@pjofca.com

David Brown
Dipti Singh
Stephanie Toti
THE LAWYERING PROJECT
25 Broadway, 9th Floor
New York, NY 10004
dbrown@lawyeringproject.org
dsingh@lawyeringproject.org
stoti@lawyeringproject.org

Molly Duane
Caroline Sacerdote
Autumn Katz
CENTER FOR REPRODUCTIVE RIGHTS
199 Water St. 22nd Floor
New York, NY 10038
mduane@reprorights.org
csacerdote@reprorights.org
akatz@reprorights.org

J. Alexander Lawrence
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, NY 10019
alawrence@mofo.com

 /s/ Darren McCarty
DARREN MCCARTY
Special Counsel for Civil Litigation