FILED
2018 JAN 29 PM 12: 22

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

WHOLE WOMAN'S HEALTH, BROOKSIDE
WOMEN'S MEDICAL CENTER PA d/b/a
Brookside Women's Health Center and Austin
Women's Health Center, DR. LENDOL L. DAVIS,
ALAMO CITY SURGERY CENTER PLLC d/b/a
Alamo Women's Reproductive Services, and NOVA
HEALTH SYSTEMS, INC. d/b/a Reproductive
Services,
               Plaintiffs,

-vs-                                                   Case No. A-16-CA-1300

JOHN HELLERSTEDT, M.D., Commissioner of
the Texas Department of State Health Services, in
his official capacity,
               Defendant.

## O R D E R

Before the Court is Plaintiffs' Second Motion for Preliminary Injunction or, in the Alternative, a Temporary Restraining Order filed on January 3, 2018. Dkt. # 96. After careful consideration of the documents, the governing law, and the file as a whole, the Court, for the reasons that follow, GRANTS IN PART Plaintiffs' Motion for a Preliminary Injunction.

For those eager for a result in this case, it is tempting to read the Court's decision as a signal on who will win at trial or as a determination of the validity of Plaintiffs' claims. Such guesswork would be premature. The Court only concludes Plaintiffs establish injunctive relief is warranted to preserve the status quo. By enjoining specific portions of Texas Health and Safety Code Chapter 697 (Chapter 697) and any associated rules from taking effect, the Court preserves its ability to render a meaningful decision following the full presentation of evidence at a forthcoming bench trial.

## BACKGROUND

Plaintiffs are a variety of Texas medical providers who offer healthcare services to women. Dkt. # 93 ¶¶ 12–17. Plaintiffs challenge the constitutionality of rules and legislation restricting the disposal of fetal tissue under 42 U.S.C. § 1983 on behalf of themselves and their patients by bringing suit against Defendant John Hellerstedt, M.D., the Commissioner of the Texas Department of State Health Services (DSHS).

Previously in this case, United States District Judge Sam Sparks issued a preliminary injunction prohibiting amendments to Title 25 of the Texas Administrative Code §§ 1.132–1.136 (the Amendments) from taking effect. Dkt. # 49. Before the Amendments, healthcare providers could choose from seven methods to dispose of human tissue, regardless of whether the tissue resulted from "surgery, labor and delivery, autopsy, embalming, or a biopsy" or a "spontaneous or induced human abortion[.]" 25 TEX. ADMIN. CODE § 1.136(4)(A)(ii) (2015); 14 Tex. Reg. 1457, 1457–62 (adopted Mar. 14, 1989). The Amendments modified these rules, limiting disposal of fetal tissue to three methods regardless of gestational age: interment, incineration followed by interment, or steam disinfection followed by interment." 41 Tex. Reg. 9709, 9738–39 (Dec. 9, 2016) (codified at 25 TEX. ADMIN. CODE § 1.136(a)(4)(A)(v)–(a)(4)(B)(I)). Because the Amendments were enjoined from taking effect, healthcare providers could still use any of the seven methods of tissue disposal specified by Texas law as adopted in 1989. See 25 TEX. ADMIN. CODE § 1.136(4)(A)(ii). DSHS appealed the preliminary injunction to the Fifth Circuit Court of Appeals, and Judge Sparks stayed the case pending a decision from the appellate court. Dkt. # 56; Dkt. # 66.

While appeal of the preliminary injunction was pending, Texas enacted Texas Senate Bill 8 (SB 8). *See* Act of June 6, 2017, 85th Leg., R.S., ch. 441, 2017 Tex, Sess. Law Serv. 1165 (West).[1] Among other things, SB 8 created a new chapter in the Texas Health and Safety Code, Chapter 697, which also modifies the Texas statutory scheme for disposal of fetal tissue. *Id.* at § 13. It appears the Texas Legislature attempted to address criticisms of the Amendments through Chapter 697. *See* Dkt. # 108 at 7–8 (characterizing Chapter 697's provisions as a response to Plaintiffs' constitutional challenges and the Court's prior rulings concerning the Amendments).

Chapter 697 defines a new category of tissue, "embryonic and fetal tissue remains" (EFTR), as "an embryo, a fetus, body parts, or organs from a pregnancy that terminates in the death of the embryo or fetus and for which the issuance of a fetal death certificate is not required by state law. The term does not include the umbilical cord, placenta, gestational sac, blood, or body fluids." TEX. HEALTH & SAFETY CODE § 697.002(3). Under § 697.004, a Texas healthcare facility "that provides health or medical care to a pregnant woman" must dispose of EFTR passed or delivered at the facility by interment or cremation. *See id.* § 697.004(a).[2] Any ashes resulting from cremation of EFTR "(1) may be interred or scattered in any manner as authorized by law for human remains; and (2) may not be placed in a landfill." *Id.* § 697.004(b). Penalties for failure to comply with Chapter 697 include suspension or revocation of a healthcare facility's license, a civil penalty of $1,000 for each violation, and the expenses of the State's effort to enforce a civil penalty via suit. *Id.* § 697.007–697.008.

---

[1] The Court cites this act hereafter as SB 8.

[2] Although § 697.004 lists four methods of disposal for EFTR, all four methods conclude with either interment or cremation. *Id.* § 697.004(a). Interment is defined as "the disposition of remains by entombment, burial, or placement in a niche." *Id.* § 697.002(6). Cremation is defined as "the irreversible process of reducing remains to bone fragments through direct flame, extreme heat, and evaporation." *Id.* § 697.002(1).

The sole stated purpose of Chapter 697 is to "express the state's profound respect for the life of the unborn by providing for a dignified disposition of embryonic and fetal tissue remains." *Id.* § 697.001. No health and safety purpose has been articulated despite Chapter 697's presence in the Texas Health and Safety Code.

Although the entirety of SB 8 took effect September 1, 2017, SB 8 established a variety of effective dates for different components. *See* SB 8 §§ 18–19. Most significant here, § 697.004 governs the disposition of all EFTR starting February 1, 2018. *Id.* § 19(d).[3] As summarized in the chart below, SB 8 also mandated the Health and Human Services Commission (HHSC) and DSHS carry out the following actions by specific deadlines. *Id.* § 18.

| Action | Deadline | Current Status |
|---|---|---|
| "[A]dopt any rules necessary to implement . . . Chapter[] . . . 697, Health and Safety Code . . . ." <br><br> SB 8 § 18(a). | Not later than December 1, 2017 <br><br> SB 8 § 18(a). | Adopted and published in the January 26, 2018 edition of the Texas Register <br><br> *See* Dkt. # 108 at 8. |
| "[D]evelop a grant program that uses private donations to provide financial assistance for the costs associated with disposing of embryonic and fetal tissue remains." <br><br> TEX. HEALTH & SAFETY CODE § 697.006. | Not later than October 1, 2017 <br><br> SB 8 § 18(b)(2). | Accepting applications for donors <br><br> *See* Dkt. # 108 at 8–9. |

---

[3] Until February 1, 2018, Texas healthcare facilities continue to be able to use the seven methods of tissue disposal specified by the rules adopted in 1989. *See* 25 TEX. ADMIN. CODE § 1.136(4)(A)(ii).

| | | |
|---|---|---|
| "[E]stablish and maintain a registry of[] . . . participating funeral homes and cemeteries willing to provide free common burial or low-cost private burial" and "private nonprofit organizations . . . [willing] to provide financial assistance for the costs associate with burial or cremation of [EFTR] . . . "available on request to a physician, health care facility, or agent of a physician or health care facility." <br><br> TEX. HEALTH & SAFETY CODE § 697.005. | Not later than December 1, 2017 <br><br><br><br><br><br><br><br><br> SB 8 § 18(a). | Webpage established providing email address for interested donors and medical providers to contact <br><br><br><br><br><br> See Dkt. # 108 at 8–9. |
| "[B]egin to award grants under the grant program . . . ." <br><br> SB 8 § 18(b)(4). | Not later than February 1, 2018 <br><br> SB 8 § 18(b)(4). | Not yet online <br><br> See Dkt. # 108 at 9. |

On December 6, 2017, the Fifth Circuit dismissed the appeal of the preliminary injunction in light of DSHS's unopposed motion to voluntarily dismiss. Dkt. # 80. Judge Sparks then transferred this case to the undersigned. The Court subsequently lifted the stay and Plaintiffs filed an amended complaint alleging the Amendments and Chapter 697 violate Plaintiffs' due process and equal protection rights under the Fourteenth Amendment as well as the Commerce Clause. Dkt. # 84; Dkt. # 93 ¶¶ 105–112.

Shortly thereafter, Plaintiffs filed their second motion for a preliminary injunction, seeking to enjoin Chapter 697 from taking effect. DSHS filed its response on January 17, 2018, and Plaintiffs replied on January 24, 2018. With the February 1, 2018 effective date looming, the Court enters the following opinion and orders.

## LEGAL STANDARD

Early injunctive relief—be it preliminary injunction or temporary restraining order—is only issued where the movant establishes:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Jackson Women's Health Org. v. Currier,* 760 F.3d 448, 452 (5th Cir. 2014) (quotation omitted). An "extraordinary equitable remedy," a preliminary injunction's purpose is to "prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Miss. Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 627 (5th Cir. 1985) (citation omitted).

## DISCUSSION

### I. Jurisdiction

As an initial matter, the Court briefly responds to DSHS's argument the Court lacks jurisdiction over some of Plaintiffs' claims. For the reasons detailed below, DSHS's argument fails.

DSHS contends Plaintiffs' claims regarding abortion access are not ripe because Plaintiffs' injury depends on a number of future events that may not occur. Dkt. # 108 at 11. While the validity of Plaintiffs' assertions about the impact of Chapter 697 and the Amendments on abortion is an issue for trial, Plaintiffs have pled and provided evidence that restrictions on disposal of EFTR will threaten access to pregnancy-related medical care and infringe on the constitutional rights of Plaintiffs' patients as soon as they take effect. *See* Dkt. # 93 ¶¶ 7, 89–95; Dkt. # 96, App. at 29 (estimating the increased costs for healthcare providers to comply with Chapter 697); *see also, e.g.,* Dkt. # 68 at 35:2–13, 42:10–43:7, 71:25–72:9, 99:9–21., 113:1–115:2, 193:1–11 (presenting evidence of the effect of restrictions on the disposal of fetal tissue upon implementation). Plaintiffs' claims regarding abortion access are therefore ripe.

DSHS also claims Plaintiffs lack standing to assert their patients' beliefs, arguing Plaintiffs push the bounds of third-party standing too far. Dkt. # 108 at 12. Examining third-party standing in

a similar context, the Fifth Circuit reiterated "third-party standing requires the named plaintiff to have suffered an injury in fact and to share a 'close' relationship with third-parties who face an obstacle inhibiting them from bringing the claim on their own behalf." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 589 (5th Cir. 2014) (citing *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004)).

Here, like in *Abbott*, the requirements of third-party standing are met for the claims asserted by the healthcare-provider plaintiffs on behalf of their patients because (1) Plaintiffs face potential administrative and civil penalties for failing to comply with Chapter 697, (2) healthcare providers who furnish health or medical care to pregnant women share a sufficiently close relationship with their patients, and (3) "a pregnant woman seeking to assert her right to abortion faces obvious hindrances in timely bringing a lawsuit to fruition." *Id*. Patients in this case face additional obstacles to bringing suit such as a desire to maintain confidentiality surrounding pregnancy-related medical care. *See id*. at 589 n. 8 (citing *Singleton v. Wulff*, 428 U.S. 106, 117 (1976) ("For one thing, she may be chilled from such assertion [of her rights] by a desire to protect the very privacy of her decision from the publicity of a court suit.")).

DSHS also argues Plaintiffs do not have evidence their patients have uniform beliefs about the disposition of their EFTR. Dkt. # 108 at 12–13. Plaintiffs have not claimed to have evidence of such uniform beliefs. Instead, Plaintiffs only claim to have a close relationship with their patients enabling Plaintiffs to give voice to the diversity of their patients' beliefs. *See* Dkt. # 93 ¶¶ 74, 81.

Finally, DSHS states Plaintiffs' challenges to the Amendments will soon become moot, citing Chapter 697's February 1, 2018 effective date. Dkt. # 108 at 13. Although not directly stating so, DSHS appears to claim Chapter 697 completely supersedes the Amendments. *See id*. But absent the

preliminary injunction prohibiting the Amendments from being enforced, the Amendments would currently control how fetal tissue is disposed in Texas. DSHS provides no argument, evidence, or analysis demonstrating how Chapter 697 completely supersedes the Amendments. Without more information, the Court cannot conclude the Amendments would become moot on February 1, 2018. Furthermore, in the event the Court finds sections of Chapter 697 unconstitutional, the Amendments would govern unless invalidated themselves. As a result, the Court does not consider Plaintiffs' challenge to the Amendments moot at this time, and the preliminary injunction prohibiting the Amendments from taking effect remains in force.

DSHS's ripeness, standing, and mootness arguments lack merit. Finding it has jurisdiction, the Court now turns to whether Plaintiffs are entitled to preliminary injunctive relief.

**II.    Substantial Likelihood of Success**

Plaintiffs allege the Amendments and Chapter 697 violate the Fourteenth Amendment's Due Process Clause, the Fourteenth Amendment's Equal Protection Clause, and the Constitution's Commerce Clause. Dkt. # 93 ¶¶ 105–112. Today, the Court need only examine Plaintiffs' likelihood of success on their claims concerning Chapter 697 as an injunction is already in place with respect to the Amendments. Because the Court finds Plaintiffs are entitled to preliminary injunctive relief on their claim Chapter 697 violates the Fourteenth Amendment's Due Process Clause, the Court need not examine Plaintiffs' other claims at this time.

Plaintiffs allege Chapter 697 violates both procedural and substantive rights protected by the Fourteenth Amendment's Due Process Clause. In particular, Plaintiffs claim Chapter 697 is void for unconstitutional vagueness and for imposing an undue burden on women's constitutionally protected liberty.

### A.  Vagueness

Plaintiffs provide evidence Chapter 697 may be unconstitutional on procedural due process grounds because it is overly vague. A law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited or (2) is so indefinite that it allows arbitrary and discriminatory enforcement. *Women's Med. Ctr. of Nw. Hous. v. Bell,* 248 F.3d 411, 421 (5th Cir. 2001).

First, Plaintiffs present evidence indicating it is unclear what rules govern the transportation and handling of EFTR. *See* Dkt. #96 at 21–22. Plaintiffs also suggest Chapter 697 fails to remedy the Amendments' ambiguity on how ash from cremated EFTR may be disposed. *See id.* at 22–23; *see also* Dkt. # 49 at 12–13. Perhaps most significantly, HHSC's implementing rules were only recently adopted and were officially published only as the Court wrote this opinion, despite the Texas Legislature's mandate that such rules be adopted no later than December 1, 2017. Neither the healthcare providers expected to comply with recently-adopted rules, the parties, nor the Court have had sufficient time to analyze the new rules and know what conduct is prohibited.

Given Plaintiff's evidence and HHSC's delay in adopting the rules associated with Chapter 697, Plaintiffs show Chapter 697 may fail to provide a reasonable opportunity to know what conduct is prohibited and may be so indefinite that it allows arbitrary and discriminatory enforcement. Therefore, based on the record currently before the Court, Plaintiffs establish a substantial likelihood of success on their claim Chapter 697 is unconstitutionally vague.

B.  **Undue Burden**

Also, based on the record currently before the Court, Plaintiff also establish a substantial likelihood of success on their claim Chapter 697 imposes an undue burden on women's constitutionally protected liberty, specifically the right to decide whether to terminate her pregnancy.

As recently confirmed by the Supreme Court, courts are to apply the "undue burden" standard when evaluating potential restrictions on abortion access. *See Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2309–10 (2016). "[A] statute which, while furthering a valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice [to an abortion] cannot be considered a permissible means of serving its legitimate ends." *Id.* at 2309 (quoting *Planned Parenthood of Se. Pa. v. Casey,* 505 U.S. 833, 877 (1992)). A law that has "the purpose or effect of presenting a substantial obstacle to a woman seeking an abortion impose[s] an undue burden on that right." *Id.* (quoting *Casey*, 505 U.S. at 878). To determine if a law presents a substantial obstacle and is thereby termed a constitutionally impermissible undue burden, "courts consider the burdens a law imposes on abortion access together with the benefits those laws confer." *Id.* (citing *Casey*, 505 U.S. at 887–98).[4]

As a threshold matter, it seems unlikely Chapter 697 furthers a valid state interest. *See id.* (assuming a statue to which the undue burden analysis is applied "further[s] [a] valid state interest");

---

[4] Perhaps attempting to lower the standard used to evaluate restrictions on abortion access, DSHS again argues the Court should examine only whether Chapter 697 erects a substantial obstacle to a woman's exercise of the right to choose. Dkt. # 108 at 14–15. According to DSHS, the Court should not engage in the burden–benefit analysis applied in *Whole Woman's Health* because the State's interest is in respecting fetal life rather than furthering a health and safety purpose. *Id.* But as stated previously, the undue burden test is applied regardless of the valid state interest advanced. *See* Dkt. # 49 at 15; *see also Whole Woman's Health*, 136 S. Ct. at 2309; *Casey*, 505 U.S. at 877 ("[A] statute which, while furthering the interest in potential life or some other valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be a permissible means of serving its legitimate ends."). Furthermore, "a finding of an undue burden is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Casey*, 505 U.S. at 877

*id.* at 2310 ("We have found nothing in Texas'[s] record evidence that shows that . . . the new law advanced Texas'[s] legitimate interest in protecting women's health."). Evidence suggests the purported interest—"express[ing] the state's profound respect for the life of the unborn by providing for a dignified disposition of embryonic and fetal tissue remains"—may be a pretext for restricting abortion. *See* TEX. HEALTH & SAFETY CODE § 697.001 (articulating the purpose of Chapter 697). For instance, Chapter 697 was attached as an amendment to the original draft of SB 8, which contained several provisions prohibiting certain abortions.[5] This suggests Chapter 697 was part of an effort to curtail abortions in Texas.

Even if the asserted state interest is not a pretext, there is no precedent showing expressing respect for the unborn by restricting EFTR disposal after the potential for life no longer exists is a valid state interest. Thus far, legitimate state interests include protecting the potentiality of human life and protecting women's health. *See Casey*, 505 U.S. at 875–76 ("[The Supreme Court] recognized the State's 'important and legitimate interest[] . . . in protecting the potentiality of human life.'" (quoting *Roe v. Wade*, 410 U.S. 113, 162 (1973)); *Whole Woman's Health*, 136 S. Ct. at 2310 ("[O]ne is left to infer that the legislature sought to further a constitutionally acceptable objective (namely, protecting women's health)." (citation omitted)). DSHS argues the Supreme Court has recognized expressing respect for the unborn as a valid state interest by citing to *Gonzales v. Carhart*, 550 U.S. 124, 146 (2007). However, *Gonzalez* merely confirmed "the government may use its voice and its regulatory authority to show its profound respect for the life *within* the woman." *Gonzales*, 550 U.S. at 146 (emphasis added).

---

[5] Recently, another court in this district ruled a separate provision of SB 8, one banning the most common method of abortion employed after fifteen weeks, "facially unconstitutional." *See Whole Woman's Health v. Paxton*, No. A-17-CV-690-LY, 2017 WL 5641585, at *3 (W.D. Tex. Nov. 22, 2017).

Regardless of whether Chapter 697 furthers a valid state interest, the evidence in the record suggests Chapter 697 imposes an undue burden on abortion access because its burdens appear to outweigh its benefits. Chapter 697's burdens include increased costs for healthcare providers. For example, the Texas Legislative Budge Board reported "burial costs [for EFTR] per year per hospital range between $228,400–$655,200." Dkt # 96, App. at 30. It is also unclear if Chapter 697 fully resolved the logistical challenges of handling EFTR identified in the decision to enjoin the Amendments. *See* Dkt. # 49 at 19 & n. 4 (citing evidence indicating restrictions on disposal methods for fetal tissue pose sorting, storage, transportation, and permitting challenges). Evidence also indicates healthcare providers would be constrained by the limited number of vendors willing and able to dispose of EFTR as mandated by § 697.004. *See id.* (noting DSHS and Plaintiffs each identified one vendor); Dkt # 108 at 22 (arguing DSHS's vendor, Carnes, may store, transport, dispose of EFTR under Chapter 697). If true, such a fact would threaten the continued availability of abortion services. *See* Dkt. # 49 at 20–21 (citing testimony one women's healthcare center was nearly forced to close after two successive medical waste disposal vendors dropped the healthcare facility as a client following harassment by anti-abortion activists). Chapter 697 attempts to remedy these problems by developing a grant program to provide healthcare providers with financial assistance and instituting a registry of vendors willing to provide cremation or interment services. *See* TEX. HEALTH & SAFETY CODE §§ 697.005–697.006. But there is currently no evidence showing the grant program will be running when Chapter 697 becomes effective or the vendor registry includes more vendors than previously identified.

In addition, there is some evidence showing Chapter 697, like the Amendments, would have a negative effect on women's health by causing grief and shame and possibly discouraging women

"from obtaining gynecological care, particularly abortions and miscarriage management, from a medical facility." Dkt # 49 at 19 (citing Dkt. # 68 at 99:9–21).

Finally, Plaintiffs provide evidence Chapter 697 undermines constitutional protection afforded to personal beliefs. *See Casey,* 505 U.S. at 851 ("At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life. Beliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State."); *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion . . . ."). For example, Plaintiffs provide evidence suggesting Chapter 697's restrictions on the disposal of EFTR prescribe what is orthodox concerning the beginning of life. *See* Dkt. # 96 at 14–17 (citing declarations and testimony indicating that requiring EFTR to be disposed in a manner consistent with human remains recognizes EFTR as human remains).

Thus, Plaintiffs show Chapter 697 likely imposes significant burdens on abortion access. By contrast, the only identified benefit is the expression of the State's respect. *See* Dkt. # 108 at 16. Therefore, based on the evidence before it at this time, the Court concludes Chapter 697's burdens likely outweigh its benefits and Chapter 697 is likely an undue burden on abortion access. As a result, Plaintiffs establish a substantial likelihood of success on their claim Chapter 697 violates the Fourteenth Amendment's Due Process Clause and is therefore unconstitutional.

Because Plaintiffs establish a substantial likelihood of success on their due process claims, the Court need not examine whether Plaintiffs show a substantial likelihood of success on their other

claims. However, whether Plaintiffs ultimately prevail on any claims depends on the evidence produced at trial and a full analysis of Chapter 697 and its associated rules.

### III. Remaining Factors

Plaintiffs also meet the remaining factors for a preliminary injunction—a substantial threat of irreparable injury, the threatened injury outweighs any harm from the injunction, and an injunction will not disserve the public interest.

Like the Amendments' restrictions on the disposal of fetal tissue, Chapter 697's restrictions on the disposal of EFTR threaten to deprive women of a constitutional right, impair abortion access in Texas, and inhibit healthcare providers' ability to offer a range of gynecological care. *See* Dkt # 49 at 21–22. Such threatened injuries are substantial and irreparable. And, as the only harm to DSHS is a delay in conferring respect on the unborn, the injuries threatened by Chapter 697 outweigh any harm to DSHS caused by granting an injunction. *See id.* at 22.

Finally, there is no indication an injunction would disserve the public interest. Preserving the status quo maintains EFTR disposal methods that have been in effect since 1989. Granting an injunction gives the Court and the parties time to develop the record regarding the case's constitutional questions without subjecting Plaintiffs or the public to Chapter 697's potential harms.

### IV. Severance

In the event the Court finds injunctive relief appropriate, DSHS urges the Court to limit any injunctive relief to the problematic sections of Chapter 697. Dkt. # 108 at 25–26. Additionally, SB 8 contains a severability clause. *See* SB 8 § 21. As Plaintiffs do not challenge the constitutionality of Chapter 69's grant program or registry, the Court sees no reason to enjoin the entirety of Chapter 697. *See* Dkt. # 93 (claiming only the portions of Chapter 697 pertaining to the disposition of EFTR are unconstitutional). Therefore, the Court limits its preliminary injunction to the provisions of

Chapter 697 restricting disposal of EFTR, specifically §§ 697.004, 697.007, and 697.008 as well as any associated implementing rules adopted under SB 8 § 18(a).

## CONCLUSION

Because Plaintiffs satisfy all four requirements for a preliminary injunction, the Court **GRANTS IN PART** Plaintiffs' Motion for a Preliminary Injunction (Dkt. # 96) with respect to the provisions of Chapter 697 restricting the disposition of EFTR, specifically Texas Health and Safety Code §§ 697.004, 697.007, 697.008 and implementing rules adopted under SB 8 § 18(a). In advance of this decision, the parties agreed an expedited bench trial would be appropriate and any injunctive relief would remain in effect until this Court reached a final decision in this case.

Accordingly, Defendant John Hellerstedt, as well as his employees, agents, and successors in office, is ENJOINED from enforcing Texas Health and Safety Code §§ 697.004, 697.007, 697.008 and implementing rules adopted under SB 8 § 18(a) until this Court issues a judgment in this case. No bond is required. The grant program under Texas Health and Safety Code § 697.006 and the registry under § 697.005 are outside of the scope of this preliminary injunction.

The Court REFERS the issue of setting an expedited scheduling order and discovery schedule for this case to Magistrate Judge Andrew W. Austin. The Court also REFERS all nondispositive discovery matters to Magistrate Judge Andrew W. Austin. Finally, the parties are ORDERED to confer and submit proposed trial dates within TEN (10) DAYS of the entry of this order.

**IT IS SO ORDERED.**

DATE: Austin, Texas, January 29, 2018.

DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE