# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| WHOLE WOMAN'S HEALTH, et al. | § | |
| | § | |
| V. | § | A-16-CV-1300-DAE |
| | § | |
| CHARLES SMITH, et al. | § | |

## ORDER

Before the Court is the Texas Catholic Conference of Bishops' Opposed Motion to Quash (Dkt. No. 150), Plaintiffs' Opposition (Dkt. No. 156), and the TCCB's Reply (Dkt. No. 157). The Court held a hearing on the motion on June 13, 2018.

In its motion, the TCCB seeks to quash a document subpoena served on it by Plaintiffs. The subpoena was originally served in late March 2018, and the TCCB filed a motion to quash the subpoena on April 2, 2018. The next day the undersigned denied the motion without prejudice, and directed the parties to confer on the motion and seek to resolve the dispute by agreement. Dkt. No. 133. The Court also requested the TCCB to follow the directives of the Scheduling Order (which called for an informal conference with the undersigned) in the event the parties were unable to reach agreement on the matter. The Court held such a conference on Friday, June 1, 2018, and ultimately granted the TCCB permission to file its motion.[1]

Though the original subpoena sought a broader category of documents, through discussions the scope of the subpoena has been narrowed significantly. First, the parties agreed to a set of eight search terms that were used to identify potentially responsive documents. From that universe of

---

[1] The Court set an expedited briefing schedule for the motion, as the case is set for trial on July 19, 2018, and the discovery deadline for the case is June 15, 2018.

documents, Plaintiffs are only requesting that the TCCB produce those which meet all of the following criteria:

    (1)    they are emails either sent or received by TCCB Executive Director, Jennifer Allmon;

    (2)    the emails were sent or received on or after January 1, 2016; and

    (3)    the emails or attachments relate to the burial, cremation, or disposition of fetal or embryonic tissue.

As noted, Ms. Allmon is the Executive Director of the TCCB. She has provided both live and affidavit testimony in this case, in support of the challenged legislation. The State intends to call her as a witness at trial as well. The primary focus of her testimony has been on the TCCB's intention to provide cost-free burial for fetal or embryonic tissue, and on TCCB's attempts to identify cemeteries or funeral directors that will provide such services. The availability of such services will be a central issue at trial.

Though the TCCB raises a relevance objection to the documents, that is not the main focus of this dispute. Regardless, as noted at the hearing, the Court overrules this objection. As narrowed, the documents requested by the subpoena are plainly within the scope of the discovery permitted by the Federal Rules, as they are limited to documents either sent or received by Ms. Allmon, who will be a trial witness, and are further limited to the relevant time frame and the issue on which she will testify. These documents are plainly relevant and discoverable.

Instead, the primary focus of the TCCB's objection to producing the documents are two arguments based on the First Amendment. First, TCCB raises an objection based on the Free Exercise Clause, and second it objects on the ground that the discovery infringes on the TCCB's First Amendment right peaceably to assemble and petition the government.

The TCCB's Free Exercise argument is elusive. Though it cites a number of cases, those cases are largely inapposite. The central theme of all of the cited cases is that, as the TCCB itself notes, "religious doctrine and teaching be left to the free choice of churches and believers, and cannot be controlled by government." Dkt. No. 150 at 11. Thus, courts have refused to intervene in such matters as disputes regarding the appointment or firing of clergy, the unionization of church employees, or similar matters that would cause a court to interfere in matters of church governance or religious doctrine. *See, e.g.*, *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94 (1952). Importantly, however, the Fifth Circuit has held that the Free Exercise Clause does not provide a blanket privilege for all communications of a religious organization. *Ambassador Coll. v. Goetzke*, 675 F.2d 662 (5th Cir. 1982). In *Goetzke* the Circuit noted that there was "no danger of the government seeking to monitor or regulate a religious group" in that case, and thus there were "simply no free exercise considerations of even arguable validity." *Id.* at 664. Given the narrow scope of the requested documents, the same is the case here. The documents requested do not address religious doctrine or church governance, but instead relate directly to a factual issue that will be central at trial: precisely what burial services are available, and will remain available, to abortion providers in Texas. That the primary organization presently offering to make those services available is a church does not make the relevant facts immune from discovery.

Though the TCCB's second objection has more potential merit than its first, it still falls short. As the undersigned noted in a 2016 decision,

> Courts recognize a qualified discovery privilege under the First Amendment, based primarily on the right to peaceably assemble and the right to petition the government found in that amendment. . . . The privilege arising out of the First Amendment is not absolute, however, as it only protects a party from compelled disclosure that would chill the associational rights at issue. Thus, a party asserting the privilege

3

> must make a prima facie showing of an objectively reasonable probability of a chilling effect on their First Amendment rights if the discovery is permitted. This means that the party must show that disclosure will deter members of the association from maintaining membership due to fears of threats, harassment, or reprisal from either government officials or private parties.

*Wal-Mart Stores, Inc. v. Tex. Alc. Bev. Comm'n*, 2016 WL 5922315 * __ (W.D. Tex. Oct. 11, 2016) (citations omitted). Here, the TCCB has failed to make that showing. Indeed, as noted by its counsel at the hearing, the TCCB members are extremely committed to their position on abortion, and on providing burial services for fetal and embryonic tissue, and there is very little that would chill the exercise of their associational and petition rights on these issues. Further, there is no evidence that producing the limited group of documents discussed above would expose the bishops or other members of the TCCB to threats, harassment, or reprisal. Thus, while the TCCB does have a qualified discovery privilege derived from the First Amendment rights to assemble and petition, that privilege does not apply to the documents requested by the subpeona.

At the hearing, the TCCB made the argument that, as noted in the Ninth Circuit's decision in *Perry v. Schwarzenegger,* there is a difference for purposes of the qualified associational privilege between communications with third parties, and communications internal to the association. 591 F.3d 1147 (9th Cir. 2009). The TCCB's suggestion is that the latter—internal communications—are entitled to a higher level of protection, and perhaps are even exempt from disclosure altogether. But as *Perry* itself notes, though disclosure of internal communications of an organization is more likely to cause the sort of chilling effect the privilege addresses, even those communications are not beyond discovery. Rather, as has already been discussed, the associational privilege is a *qualified* privilege, and is subject to a balancing analysis:

the second step of the analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for such discovery, but not necessarily to preclude it. The question is therefore whether the party seeking the discovery ''has demonstrated an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association.''

*Perry*, 591 F.3d at 1161 (quoting *NAACP v. Alabama*, 357 U.S. 449, 463 (1958)). Thus, even if there would be some chilling effect on the members of the TCCB if the subpoenaed documents are produced—and that is doubtful—the Plaintiffs' interest in obtaining the documents is sufficient to outweigh any such impact. Indeed, given that the documents are limited to those directly addressing the specific *factual* question at issue—the availability of burial services for fetal tissue—it is highly unlikely that any chilling impact will be felt. But even if one is felt, *see* Dkt. No. 150-1 at ¶ 9, the need for the documents in this litigation outweighs any deterrent effect the discovery might have on TCCB. Finally, it is also notable that in *Perry* the documents specifically requested were aimed at the internal strategic discussions of a political campaign, whereas here the subpoena (as revised) only seeks documents discussing burial services, a topic that is neither sensitive nor strategic.[2]

The Court is sensitive to the First Amendment concerns that the TCCB has raised here. Accordingly, this order is expressly limited to the facts before the Court, and specifically is based on the narrowed subpoena, as described at the outset. Because the documents sought go to the heart of the issues that will be the focus of the trial, and because that issue is a fact issue, not one of

---

[2]The TCCB submitted a small number of documents for *in camera* review, intended to provide examples of the concerns it raises in its motion to quash. The Court's review of those documents does not change the opinion stated in the text. Indeed, the emails between Ms. Allmon and staff members of the TCCB have no religious focus, do not discuss church doctrine or governance, and are more or less routine discussions of the burial services at issue here. Nor are they communications that, if made public, would embarrass the church or subject it to threats or reprisals.

religion, the Court is comfortable in requiring the TCCB to respond to the subpoena. But nothing herein should be taken as suggesting that a religious entity is subject to discovery without limit, and the Court's ruling is a limited one.

Accordingly, the Texas Catholic Conference of Bishops' Opposed Motion to Quash (Dkt. No. 150) is **DENIED.**

SIGNED this 13th day of June, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE